## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-02105-WJM-MEH

CHRISTOPHER KAIN, Individually and on Behalf of All Others Similarly Situated,

      Plaintiff,

 v.

AMPIO PHARMACEUTICALS,
INC., MICHAEL A. MARTINO,
MICHAEL MACALUSO, and
HOLLI CHEREVKA,

      Defendants.

---

## MOTION OF PADME MANAGEMENT CORP. FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ...................................................................................................................1

II.  STATEMENT OF FACTS ....................................................................................................2

III. ARGUMENT........................................................................................................................4

A.  The Court Should Appoint Movant as Lead Plaintiff..........................................................4

    1.  The Procedure Required by the PSLRA ....................................................................4

        a.  Movant Is Willing to Serve as Class Representative ...............................................6

        b.  Movant has the Requisite Financial Interest in the Relief Sought by the Class ......6

    2.  Movant Satisfies the Requirements of Rule 23(a) of the Federal Rules of Civil
        Procedure ..................................................................................................................7

        c.  Movant's Claims are Typical of the Claims of all the Class Members ...................8

        d.  Movant Will Adequately Represent the Class..........................................................9

B.  Movant's Choice of Counsel Should Be Approved.............................................................11

IV. CONCLUSION....................................................................................................................12

## TABLE OF AUTHORITIES

**Cases**

*In re Coinbase Global Securities Litigation,*
No. 3:21-cv-05634-VC, Dkt. No. 87 (N.D. Cal. Nov. 5, 2021) ...............................................10

*Cooke v. Equal Energy Ltd.,*
C.A. No.14-cv-0087-C, 2014 WL 3819159 (W.D. Okla. May 8, 2014)..............................7, 8

*Daniels Family 2001 v. Las Vegas Sands Corp.,*
2021 U.S. Dist. LEXIS 974 (D. Nev. Jan. 5, 2021) ..................................................................11

*Deinnocentis v. Dropbox, Inc.,*
2020 U.S.  Dist. LEXIS 8680 (N.D. Cal. Jan. 16, 2020)...........................................................11

*In re Drexel Burnham Lambert Group*,
960 F.2d 285 (2d Cir. 1992)........................................................................................................9

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336, 338 (2005)............................................................................................................2

*Friedman v. Quest Energy Ptnrs. LP,*
261 F.R.D. 607 (W.D. Okla. 2009)..........................................................................................4, 6

*Gen. Tel. Co. v. Falcon*,
457 U.S. 147 (1982)....................................................................................................................8

*Jiang v. BlueCity Holdings Limited, et al.*,
No. 1:21-cv-04044-CLP (E.D.N.Y. Dec. 22, 2021) ................................................................10

*Lane v. Page*,
250 F.R.D. 634 (D.N.M. 2007).................................................................................................1

*Malriat v. Quantumscape Corp.*,
2021 U.S. Dist. LEXIS 76914 (N.D. Cal. April 20, 2021).......................................................11

*In re Oxford Health Plans, Inc. Sec. Litig.*,
182 F.R.D. 42 (S.D.N.Y. 1998) .................................................................................................8

*In re Party City Secs. Litig.*,
189 F.R.D. 91 (D.N.J. 1999).......................................................................................................7

*In re Razorfish, Inc. Secs. Litig.*,
143 F. Supp. 2d 304 (S.D.N.Y. 2001)........................................................................................1

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993)......................................................................................................8

*Schulman v. Lumenis, Ltd.,*
    No. 02 Civ. 1989 (DAB), 2003 WL 21415287 (S.D.N.Y June 18, 2003)................................7

*Smith v. Suprema Specialties, Inc.*,
    206 F. Supp. 2d 627 (D.N.J. 2002) .......................................................................................2

*Snyder v. Baozun Inc.,*
    2020 U.S. Dist. LEXIS 163967 (S.D.N.Y. Sept. 8, 2020).........................................................11

*Subramanian v. Watford, et. al.*,
    2021 U.S. Dist. LEXIS 81823 (D. Colo. April 29, 2021)..........................................................11

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
    216 F.R.D. 248 (S.D.N.Y. 2003) .............................................................................................7

*Weiss v. York Hosp.*,
    745 F.2d 786 (3d Cir. 1984).....................................................................................................8

*Weltz v. Lee,*
    199 F.R.D. 129 (S.D.N.Y. 2001) ............................................................................................7

*White Pine Invs. v. CVR Ref.,*
    2021 U.S. Dist. LEXIS 1199 (S.D.N.Y. Jan. 5, 2021)............................................................11

**Statutes**

15 U.S.C. § 78u-4 ........................................................................................ *passim*

**Rules**

Fed. R. Civ. P. 23.......................................................................................... *passim*

## I.    INTRODUCTION

Padme Management Corp. ("Movant"), by and through its counsel, will and hereby does move this Court, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for an Order (attached hereto): (i) appointing Movant as Lead Plaintiff in the above-captioned action (the "Action") on behalf of all persons or entities that purchased or otherwise acquired Ampio Pharmaceuticals, Inc. ("Ampio" or the "Company") common stock between December 29, 2020 and August 3, 2022, inclusive (the "Class Period"), pursuant to 15 U.S.C. §78u-4(a)(3)(B); (ii) approving Movant's selection of counsel Levi & Korsinsky, LLP ("Levi & Korsinsky"); and (iii) granting such other and further relief as the Court may deem just and proper.

Presently pending before the Court is the above-captioned action (the "Action") brought on behalf of all persons and entities that purchased or otherwise acquired Ampio common stock during the Class Period. Plaintiff in the Action alleges violations of the Exchange Act against Defendants Ampio, Michael A. Martino ("Martino"), Michael Macaluso ("Macaluso"), and Holli Cherevka ("Cherevka"), (collectively, "Defendants").[1]

The PSLRA provides for the Court to appoint as lead plaintiff the movant that has the largest financial interest in the litigation who has also made a *prima facie* showing that they are an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure. *See Lane v.*

---

[1] Specifically, Plaintiff in the Action alleges that Defendants violated Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

*Page*, 250 F.R.D. 634, 640 (D.N.M. 2007); *In re Razorfish, Inc. Secs. Litig.*, 143 F. Supp. 2d 304, 307 (S.D.N.Y. 2001); *see also Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 632 (D.N.J. 2002). Movant satisfies both requirements.

Movant lost approximately $298,898.80 under both a straight last-in-first-out "LIFO" analysis, and in losses recoverable pursuant to *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 338 (2005). As such, Movant is the presumptive lead plaintiff under the PSLRA.[2] Moreover, Movant satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure in that its claims are typical of the claims of the Class, and it will fairly and adequately represent the interests of the Class. As such, Movant meets the requirements of the PSLRA for appointment as Lead Plaintiff.

## II.    STATEMENT OF FACTS[3]

Through various filings with the SEC, Ampio claims to have developed Ampion®, its lead product with "unique immunomodulatory action and anti-inflammatory effects" used to treat individuals with inflammatory conditions including, but not limited to, severe osteoarthritis of the knee ("OAK"). ¶ 3. The Company further asserts that "Ampion is currently in development as an intra-articular injection treatment for severe OAK, an intravenous and inhaled treatment for hospitalized severe and/or critical COVID-19 patients, and an at-home inhalation treatment for

---

[2] Movant's certification identifying its transactions in Ampio, as required by the PSLRA, as well as a chart identifying its losses are attached to the declaration of Adam M. Apton ("Apton Decl."), dated October 17, 2022 as Exhibits A and B, respectively.

[3] Citations to "¶ __" are to paragraphs of the Class Action Complaint (the "*Kain* Complaint") filed in the action entitled *Kain v. Ampio Pharmaceuticals, Inc., et al.*, Case No. 1:22-cv-02105-WJM-MEH (the "*Kain* Action"). Unless otherwise defined, capitalized terms shall have the same meaning set forth in the *Kain* Complaint. The facts set forth in the *Kain* Complaint are incorporated herein by reference.

patients with prolonged respiratory symptoms due to COVID-19, commonly referred to as "Long-COVID." *Id.*

Beginning in 2010 and lasting through approximately March 2022, Ampio conducted numerous clinical trials and analyses to determine Ampion's efficacy. ¶ 4. Despite confidently advertising on numerous occasions that Ampion demonstrated a statistically significant decrease in pain associated in symptomatic moderate-severe OAK, the Company failed to bring Ampion to market. *Id.*

After months of delay and analyst speculation of the effectiveness of Ampion, on May 16, 2022, the Company announced that it had formed a special committee of the Ampio Board of Directors (the "Board") was conducting internal investigations focusing specifically on the statistical analysis of Ampio's AP-013 clinical trial and unauthorized provision of Ampion which had not yet been approved by the U.S. Food and Drug Administration ("FDA"). ¶ 5.

Then, in premarket hours on August 3, 2022, Ampio issued a press release containing a letter to stockholders revealing that the Individual Defendants (as defined herein) "and senior staff were aware, at the time of the per-protocol interim analysis in March 2020, that the AP-013 trial did not demonstrate efficacy for Ampion on its co-primary endpoints of pain and function; and that these persons did not fully report the results of the AP-013 trial and the timing of unblinding of data from the AP-013 trial." ¶ 6. In response to this news, the Company's share price dropped 35.38%, or $0.06, from the previous day's close, on greater than usual trading volume. *Id.*

After months of speculation the truth regarding the efficacy of Ampion for treatment of OAK began to unravel. ¶ 44. On April 20, 2022, the Company issued a press release providing a regulatory update that the FDA had responded negatively to its Type C meeting request. *Id.*

On this news, shares of Ampio stock declined 26.47% from a close of $0.34 per share on April 20, 2022 to a close on April 21, 2022 of $0.25 per share. ¶ 45.

Then, in after-market hours on May 16, 2022, Ampio issued a press release announcing that an independent special committee of the Board (the "Special Committee"), with the assistance of independent legal counsel, was in the process of conducting an internal investigation relating to the AP-013 study. ¶ 46. The revelation of the internal investigation caused shares of Ampio stock to drop 10% from a close of $0.22 per share on May 16, 2022 to $0.18 per share on May 18, 2022. *Id.*

In the premarket hours on August 3, 2022, Ampio issued a press release containing a letter authored by defendant Martino and non-defendant Kevin Buchi, Chairman of the Board, to Ampio's stockholders (the "Stockholder Letter"). ¶ 47. The Stockholder Letter reiterated that the basis of the previously announced investigation was primarily focused on: (i) the statistical analysis of Ampio's AP-013 study; and (ii) the unauthorized provision of Ampion for use by individuals not participating in clinical trials. *Id.*

After trading as high as $2.76 per share on December 22, 2020, after the Stockholder Letter was issued, the Company's share price plummeted to close at $0.10 per share on August 3, 2022, a 96.25% drop, on unusually heavy trading value. ¶ 50.

### III.    ARGUMENT

#### A.  <u>The Court Should Appoint Movant as Lead Plaintiff</u>

##### 1.  **The Procedure Required by the PSLRA**

Once the Court decides the issue of consolidation, the PSLRA mandates that the Court decide the lead plaintiff issue "[a]s soon as practicable." 15 U.S.C. §78u-4(a)(3)(B)(ii). The

PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a). *See Friedman v. Quest Energy Ptnrs. LP,* 261 F.R.D. 607, 609 (W.D. Okla. 2009).

The plaintiff who files the initial action must publish notice to the class within 20 days after filing the action, informing class members of their right to file a motion for appointment of lead plaintiff. 15 U.S.C. §78u-4(a)(3)(A). The PSLRA requires the Court to consider within 90 days all motions filed within 60 days after publication of that notice by any person or group of persons who are members of the proposed class to be appointed lead plaintiff. 15 U.S.C. §§78u-4(a)(3)(A)(i)(II) and (a)(3)(B)(i).

The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

(aa)    has either filed the complaint or made a motion in response to a notice;

(bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only upon proof by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

As set forth below, Movant satisfies the foregoing criteria and is not aware of any unique defenses that Defendants could raise against it. Therefore, Movant is entitled to the presumption

that it is the most adequate plaintiff to represent the Class and, as a result, should be appointed lead

plaintiff in the Action.

### a. Movant Is Willing to Serve as Class Representative

On August 17, 2022, plaintiff in the *Kain* Action filed a notice (the "Notice") published

pursuant to Section 21D(a)(3)(A) of the Exchange Act, which announced that a securities class

action had been filed against Ampio and which advised putative class members that they had 60

days to file a motion to seek appointment as a lead plaintiff in the action.[4] Movant has reviewed

the complaint filed in the pending Action and has timely filed its motion pursuant to the Notice.

### b. Movant has the Requisite Financial Interest in the Relief Sought by the Class

According to 15 U.S.C. §78u-4(a)(3)(B)(iii), the Court shall appoint as lead plaintiff the

movant or movants with the largest financial loss in the relief sought by the action. As

demonstrated herein, Movant has the largest known financial interest in the relief sought by the

Class. *See* Apton Decl., Ex. B. The movant with the largest financial interest who also meets the

requirements of typicality and adequacy under Rule 23 is presumptively the lead plaintiff. *See*

*Friedman,* 261 F.R.D. at 609-610.

Under the PSLRA, damages are calculated based on: (i) the difference between the

purchase price paid for the shares and the average trading price of the shares during the 90-day

period beginning on the date the information correcting the misstatement was disseminated, or

(ii) the difference between the purchase price paid for the shares and the average trading price of

the shares between the date when the misstatement was corrected and the date on which the

---

[4] On August 17, 2022, the Notice was published over *Business Wire,* a widely circulated national business-oriented wire service. *See* Apton Decl. Exhibit C.

plaintiff sold their shares, if they sold their shares before the end of the 90-day period. 15 U.S.C. §78u-4(e).

Movant purchased Ampio common stock during the Class Period in reliance upon the materially false and misleading statements issued by Defendants and was injured thereby. Movant suffered a substantial loss of $298,898.80. *See* Apton Decl., Ex. B. Movant thus has a significant financial interest in the outcome of this case. To the best of its knowledge, there is no other applicant who has sought, or is seeking, appointment as lead plaintiff that has a larger financial interest and also satisfies Rule 23.

**2.  Movant Satisfies the Requirements of Rule 23(a) of the Federal Rules of Civil Procedure**

According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

With respect to the qualifications of a lead plaintiff, Rule 23(a) requires generally that representatives' claims be typical of those of the class, and that representatives will fairly and adequately protect the interests of the class. *See Cooke v. Equal Energy Ltd.*, 14-cv-0087-C, 2014 WL 3819159, at *2-3 (W.D. Okla. May 8, 2014); *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003); *Schulman v. Lumenis, Ltd.,* No. 02 Civ. 1989 (DAB), 2003

WL 21415287, at \*5-6 (S.D.N.Y June 18, 2003); *Weltz v. Lee,* 199 F.R.D. 129, 133 (S.D.N.Y.

2001) (considering only typicality and adequacy on a motion as lead plaintiff); *see also In re Party*

*City Secs. Litig.*, 189 F.R.D. 91, 106 (D.N.J. 1999). *See generally* Fed. R. Civ. P. 23(a)(3)-(4).

Furthermore, only a "preliminary showing" of typicality and adequacy is required at this stage.

*Cooke*, 2014 WL 3819159, at \*2. Consequently, in deciding a motion to serve as Lead Plaintiff,

the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer

examination of the remaining requirements until the Lead Plaintiff moves for class certification.

*See id.*; *Weltz,* 199 F.R.D. at 133.

As detailed below, Movant satisfies both the typicality and adequacy requirements of Fed.

Civ. P. 23, thereby justifying its appointment as Lead Plaintiff.

### c.   Movant's Claims are Typical of the Claims of all the Class Members

Under Rule 23(a)(3), typicality exists where "the claims . . . of the representative parties"

are "typical of the claims . . . of the class." Movant plainly meets the typicality requirement of Rule

23 because: (i) it suffered the same injuries as the absent class members; (ii) it suffered as a result

of the same course of conduct by defendants; and (iii) its claims are based on the same legal issues.

*See Cooke,* 2014 WL 3819159, at \*2; *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993); *In*

*re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 50 (S.D.N.Y. 1998) (typicality inquiry

analyzes whether plaintiffs' claims "arise from the same conduct from which the other class

members' claims and injuries arise"). Rule 23 does not require that the named plaintiff be

identically situated with all class members. It is enough if their situations share a common issue of

law or fact. *See Weiss v. York Hosp.*, 745 F.2d 786, 808-09 (3d Cir. 1984).[5]

In this case, the typicality requirement is met because Movant's claims are identical to, and neither compete nor conflict with the claims of the other Class members. Movant, like the other members of the Class, acquired Ampio common stock during the Class Period at prices artificially inflated by Defendants' materially false and misleading statements, and was damaged thereby. Thus, its claims are typical, if not identical, to those of the other members of the Class because Movant suffered losses similar to those of other Class members and its losses result from Defendants' common course of wrongful conduct. Accordingly, Movant satisfies the typicality requirement of Rule 23(a)(3). *See Cooke,* 2014 U.S. Dist. LEXIS 63452, at *7-8; *Weiss*, 745 F.2d at 809; *see also In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992).

### d.  Movant Will Adequately Represent the Class

Moreover, Movant is an adequate representative for the Class. Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to whether the movant's interests are clearly aligned with the members of the putative Class and whether there is evidence of any antagonism between the interests of the movant and other members of the Class. 15 U.S.C. §78u-4(a)(3)(B); *see Drexel Burnham,* 960 F.2d at 291; *Weltz,* 199 F.R.D. at 133.

Movant's interests are clearly aligned with those of the other members of the Class. Not only is there no evidence of antagonism between Movant's interests and those of the Class, but Movant has a significant and compelling interest in prosecuting the Action based on the large

---

[5] Additionally, although not pertinent to the instant motion, a finding of typicality frequently supports a finding of commonality and *vice versa*. *See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 158 n.13 (1982) (noting that the typicality and commonality requirements tend to merge).

financial losses it suffered as a result of the wrongful conduct alleged in the Action. This motivation, combined with Movant's identical interest with the members of the Class, demonstrates that Movant will vigorously pursue the interests of the Class. *See Clovis Oncology*, 2016 WL 660133, at *3-4 (adequacy satisfied where movant lacks conflicts with remainder of the class and possesses largest financial interest).

Moreover, Movant is a holding company operated by Mr. Raul Ferrer as its owner and sole director. Mr. Ferrer uses the entity to manage his personal investment accounts. Mr. Ferrer, as Movant's authorized representative, will make all decisions on behalf of Movant. Mr. Ferrer is based in Panama City, Panama. He is more than qualified to serve as Movant's representative, as he has a bachelor's degree in business from the University of New Orleans and has been investing in securities for over 28 years. Mr. Ferrer was previously employed as a broker and financial advisor in Citibank NA and other private investment firms for 13 years. Therefore, as demonstrated, Movant will prosecute the Action vigorously on behalf of the Class.

Finally, Movant has retained counsel highly experienced in prosecuting securities class actions, and will submit its choice to the Court for approval pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v). Therefore, Movant will prosecute the Action vigorously on behalf of the Class.

Accordingly, at this stage of the proceedings, Movant has made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and, therefore, satisfies 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). In addition, because Movant has sustained the largest amount of losses from Defendants' alleged wrongdoing, it is, therefore, the presumptive lead plaintiff in accordance with 15 U.S.C. §78u-4(3)(B)(iii)(I), and should be appointed as such to lead the Action.

### B.  <u>Movant's Choice of Counsel Should Be Approved</u>

The PSLRA vests authority in the lead plaintiff to select and retain Lead Counsel, subject to Court approval. 15 U.S.C. §78u-4(a)(3)(B)(v). The Court should interfere with the lead plaintiff's selection of counsel only when necessary "to protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa).

Here, Movant has selected Levi & Korsinsky to pursue this litigation on its behalf and has retained the firm as the Class' Lead Counsel in the event it is appointed as lead plaintiff. Levi & Korsinsky possesses adequate experience in securities litigation and has successfully prosecuted numerous securities class actions on behalf of injured investors, as reflected by the Firm Résumé attached to the Apton Decl. as Ex. D. Moreover, Levi & Korsinsky has often been appointed as lead counsel in similar actions in this Circuit and across the country arising under the federal securities laws on behalf of investors. *See also e.g., Jiang v. BlueCity Holdings Limited, et al.*, No. 1:21-cv-04044-CLP, Dkt. No. 16 (E.D.N.Y. Dec. 22, 2021); *In re Coinbase Global Securities Litigation,* No. 3:21-cv-05634-VC, Dkt. No. 87 (N.D. Cal. Nov. 5, 2021); *Subramanian v. Watford, et. al.*, 2021 U.S. Dist. LEXIS 81823, at *10 (D. Colo. April 29, 2021) (appointing Levi & Korsinsky noting they are "qualified, experienced, and able to vigorously conduct the proposed litigation."); *Malriat v. Quantumscape Corp.*, 2021 U.S. Dist. LEXIS 76914, at *21 (N.D. Cal. April 20, 2021); *Daniels Family 2001 v. Las Vegas Sands Corp.,* 2021 U.S. Dist. LEXIS 974, at *8 (D. Nev. Jan. 5, 2021) (appointing Levi & Korsinsky as lead counsel noting the firm's "extensive experience in complex securities class actions"); *White Pine Invs. v. CVR Ref.,* 2021 U.S. Dist. LEXIS 1199, at *10 (S.D.N.Y. Jan. 5, 2021) appointing Levi & Korsinsky noting "the firm has 'extensive experience' in this area of law and is sufficiently qualified to conduct this

litigation"; *Deinnocentis v. Dropbox, Inc.,* 2020 U.S. Dist. LEXIS 8680, at *13 (N.D. Cal. Jan. 16, 2020); *Snyder   v. Baozun Inc.,* 2020   U.S.   Dist.   LEXIS   163967, at *11 (S.D.N.Y.   Sept.   8, 2020) appointing Levi & Korsinsky noting the firm has "obtained numerous favorable judgments for  clients  in  these past  representations". Thus,  the  Court  may  rest  assured  that  by  granting Movant's motion, the Class will receive the highest caliber of legal representation possible.

## IV.    CONCLUSION

For the foregoing reasons, Movant respectfully requests that this Court: (1) appoint Movant as Lead Plaintiff for the Class in the Action; and (2) approve Levi & Korsinsky and Lead Counsel for the Class.

Dated: October 17, 2022

Respectfully submitted,

**LEVI & KORSINSKY, LLP**

 */s/ Adam M. Apton*
Adam M. Apton
55 Broadway, 10th Floor
New York, New York 10006
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: aapton@zlk.com

*Counsel for Movant and Proposed Lead
Counsel for the Class*

12

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the Court's Electronic Mail Notice List.

**LEVI & KORSINSKY, LLP**

/s/ *Adam M. Apton*
Adam M. Apton
55 Broadway, 10th Floor
New York, New York 10006
Tel.: (212) 363-7500
Facsimile: (212) 363-7171
Email: aapton@zlk.com

13