**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:22-cv-02105-WJM-MEH

CHRISTOPHER KAIN, Individually and on Behalf of All Others Similarly Situated,

        Plaintiff,

        v.

AMPIO PHARMACEUTICALS, INC.,
MICHAEL A. MARTINO,
MICHAEL MACALUSO, and
HOLLI CHEREVKA,

        Defendants.

---

**MOVANT MATTHEW SHIPLEY'S MOTION FOR APPOINTMENT AS
LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL;
AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

---

Movant Matthew Shipley ("Movant"), moves[1] the Court pursuant to §21D of the Securities

Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation

Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(3)(B), for entry of an Order appointing

Movant as Lead Plaintiff in the above-captioned action and approving his selection of Robbins

LLP ("Robbins") as Lead Counsel and Johnson Fistel, LLP ("Johnson Fistel") as Liaison Counsel

for the Class.  This Motion is based on this Motion, the below Memorandum of Law, and the

Declaration of Jeffrey A. Berens and exhibits attached thereto, the complete file and records in this

---

[1] D.C.COLO.LCivR 7.1(a) requires a conference of counsel prior to filing motions.  Due to the PLSRA's lead plaintiff procedure, however, Movant will not know which other class members may move for appointments as lead plaintiff until after all the movants have filed their respective motions.  Under these circumstances, Movant requests that the conferral requirement of Local Rule 7.1(a) be waived.

- 1 -

action, and such oral argument as the Court may consider in deciding this Motion.

## MEMORANDUM OF LAW

### I.    INTRODUCTION

This securities class action lawsuit is brought on behalf of purchasers of Ampio Pharmaceuticals, Inc. ("Ampio" or the "Company") securities during the period between December 29, 2020 and August 3, 2022, inclusive (the "Class Period"). This action is brought pursuant to sections 10(b) and 20(a) of the Exchange Act and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. §2410.10b-5, promulgated thereunder.

The PSLRA sets for the manner by which courts are to select a lead plaintiff. Pursuant to the PSLRA, the court is to appoint as lead plaintiff the movant with the largest financial interest in the litigation that otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See* 15 U.S.C. §78u-4(a)(3)(B)(iii).

Here, Movant should be appointed as Lead Plaintiff because: (i) he timely filed for appointment as Lead Plaintiff; (ii) to the best of his knowledge, Movant has the largest financial interest in this litigation; and (iii) he will adequately represent the interests of the Class. *See id.*; *see also* Section III, *infra*. Additionally, Movant has retained experienced and competent counsel to represent the Class. As the "most adequate plaintiff," Movant's selection of Robbins to serve as Lead Counsel and Johnson Fistel as Liaison Counsel for the Class should be approved. *See* 15 U.S.C. §78u-4(a)(3)(B)(v).

### II.    FACTUAL BACKGROUND

Ampio is a Delaware corporation with its principal executive offices in Englewood, Colorado. It is a pre-revenue stage biopharmaceutical company focused on the research, development, and advancement of immunomodulatory therapies for the treatment of pain from

osteoarthritis.    The Company's lead product candidate, Ampion®, purportedly has unique immunomodulatory action and anti-inflammatory effects, which may provide a treatment for individuals with inflammatory conditions, including, but not limited to, osteoarthritis of the knee ("OAK"), osteoarthritis related to other joints (i.e., hip, shoulder, ankle and hand), and the widespread inflammation associated with COVID-19 infection.    The Company asserts that "Ampion is currently in development as an intra-articular injection treatment for severe OAK, an intravenous and inhaled treatment for hospitalized severe and/or critical COVID-19 patients, and an at-home inhalation treatment for patients with prolonged respiratory symptoms due to COVID-19, commonly referred to as "'Long-COVID.'"

The Action alleges that during the Class Period, defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, defendants: (i) inflated the Company's true ability to successfully file a Biologics License Application for Ampion; (ii) inflated the results of the AP-013 clinical trials and the timing of unblinding the data from the AP-013 clinical trials; and (iii) that, as a result, of the foregoing, defendants' statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

Beginning in 2010 and lasting through approximately March 2022, Ampio conducted numerous clinical trials and analyses to determine Ampion's efficacy. Despite confidently advertising on numerous occasions that Ampion demonstrated a statistically significant decrease in pain associated in symptomatic moderate-severe OAK, the Company failed to bring Ampion to market.

On March 2, 2022, the Company announced that it had submitted a Type C meeting request to the U.S. Food and Drug Administration ("FDA") to meet with the FDA's Center for Biologics

Evaluation and Research division regarding the development and review of Ampion, and that the FDA had confirmed such meeting.

On April 20, 2022, the Company issued a press release providing a regulatory update that the FDA had responded negatively to its Type C meeting request.

On May 16, 2022, the Company announced that it had formed a special committee of the Ampio Board of Directors was conducting internal investigations focusing specifically on the statistical analysis of Ampio's AP-013 clinical trial and unauthorized provision of Ampion which had not yet been approved by the FDA.

The truth about the Company's operations and finances came to light on August 3, 2022, when Ampio issued a press release containing a letter to stockholders revealing that defendants "and senior staff were aware, at the time of the per-protocol interim analysis in March 2020, that the AP-013 trial did not demonstrate efficacy for Ampion on its co-primary endpoints of pain and function; and that these persons did not fully report the results of the AP-013 trial and the timing of unblinding of data from the AP-013 trial."

After trading as high as $2.76 per share on December 22, 2020, after the stockholder letter was issued, the Company's share price plummeted to close at $0.10 per share on August 3, 2022, a 96.25% drop, on unusually heavy trading volume, damaging investors.

As a result of defendants' wrongful acts and omissions, and the decline in the market value of Ampio's securities, Movant and other Ampio investors have suffered significant losses and damages.

### III.    ARGUMENT

####    A.    Movant Satisfies the PSLRA's Requirements and Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure that governs the appointment of a lead plaintiff in a private action arising under the Exchange Act that is brought as a class action pursuant to the Federal Rules of Civil Procedure.  15 U.S.C. §78u-4(a)(I)-(3)(B)(i.

First, a plaintiff who files the initial action must publish a notice to the class within twenty days of filing the action informing class members of the following: (i) the pendency of the action; (ii) the claims asserted therein; (iii) the purported class period; and (iv) the right to move the court to be appointed as lead plaintiff within sixty days of the publication of the notice.  15 U.S.C. §78u-4(a)(3)(A)(i).  Here, the relevant notice was published in *Businesswire* on August 17, 2022.  *See* Declaration of Jeffrey A. Berens in Support of Movant Matthew Shipley's Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel ("Berens Decl."), Exhibit A, filed concurrently herewith.  Within sixty days after publication of the notice, any "person" or "group of persons" who are members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action.  *See* 15 U.S.C. §78u-4(a)(3)(A)-(B).

Second, the PSLRA provides that within ninety days after publication of the notice, the court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members.  *See* 15 U.S.C. §78u-4(a)(3)(B).  In determining the "most adequate plaintiff," the PSLRA provides that the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is:

the person or group of persons that-

(aa)   has either filed the complaint or made a motion in response to a notice ...;

(bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii).

### 1.      Movant Has Timely Moved for Appointment as Lead Plaintiff

All class members who are interested in moving for the appointment of lead plaintiff in this matter must do so by October 17, 2022.  *See* 15 U.S.C. §78u-4(a)(3)(A)-(B).  Pursuant to the provisions of the PSLRA and within the requisite time frame following the publication of the requisite notice, Movant hereby moves this Court for appointment as Lead Plaintiff on behalf of all members of the Class.  Movant has also duly signed and filed a certification stating his willingness to serve as a representative party on behalf of the Class.  *See* Berens Decl., Exhibit B.

### 2.      Movant Has the Requisite Financial Interest in the Relief Sought by the Class

To be eligible for the "most adequate plaintiff" presumption, a movant must also possess the "largest financial interest in the relief sought by the class."   15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).  In determining which movant has the largest financial interest, courts use the four-factor test established in *Lax v. First Merchants Acceptance Corporation*, No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997).  *See Saee v. Enservco Corp.*, No. 22-cv-01267-DDD-STV, 2022 WL 3681988, at *2 (D. Colo. Aug. 25, 2022); *In re Molson Coors Brewing Co. Sec. Litig.*, 2019 WL 10301639, at *2 (D. Colo. Oct. 3, 2019).  Those factors are: (i) the number of shares purchased during the class period; (ii) the number of net shares purchased during the class period; (iii) the total net funds expended during the class period; and (iv) the approximate

losses suffered. *Id.* "Of these factors, courts have consistently held that the fourth, the magnitude of the loss suffered, is most significant." *Peifa Xu v. Gridsum Holding Inc.*, No. 18 Civ. 3655 (ER), 2018 WL 4462363, at *3 (S.D.N.Y. Sept. 17, 2018) (citations omitted).

Under this rubric, Movant's financial interest in the relief sought by the class here, is as follows:

| Shares Purchased: | Net Shares Purchased: | Net Funds Expended: | Losses: |
|---|---|---|---|
| 224,856.412 | 112,046.412 | $292,228.76 | $262,044.65 |

*See* Berens Decl., Exhibit C. To the best of Movant's knowledge, his financial interest in this matter is the largest of any competing lead plaintiff movant. Accordingly, Movant should be appointed Lead Plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B).

### 3.    Movant Satisfies the Requirements of Rule 23

According to 15 U.S.C. §78u-4(a)(3)(B)(iii), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied: (i) the class is so numerous that joinder of all members is impracticable; (ii) there are questions of law or fact common to the class; (iii) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (iv) the representative parties will fairly and adequately protect the interests of the class. Of these four prerequisites, only two—typicality and adequacy—directly address the personal characteristics of the lead plaintiff movant. Consequently, in deciding a lead plaintiff motion, the court focuses primarily on the typicality and adequacy of representation requirements, and only a preliminary showing is necessary. *Wolfe v. AspenBio Pharma*, Inc., 275 F.R.D. 625, 628 (D. Colo. 2011).

- 7 -

### a.    Typicality

The typicality requirement is satisfied "so long as the claims of the class representative and class members are based upon the same legal or remedial theory." *Id.* at 628 (citation and internal quotation marks omitted). Movant satisfies this requirement because, just like all the other proposed Class members, he purchased Ampio stock during the Class Period in reliance upon the false and misleading statements issued by defendants and suffered damages thereby, as did the other members of the putative Class. Thus, Movant's claims arise from the same factual predicate and involve substantially the same legal arguments as those of the other Class members. Accordingly, the Court should find that Movant satisfies Rule 23's typicality requirement.

### b.    Adequacy

The adequacy requirement is satisfied where there is "(1) the absence of potential conflict between the named plaintiffs and the class members and (2) that counsel chosen by the representative parties is qualified, experienced and able to vigorously conduct the proposed litigation." *Id.* Movant also satisfies the adequacy requirement. Here, Movant is an adequate Lead Plaintiff because his interest in aggressively pursuing the claims against defendants is aligned with the interests of the members of the Class who were similarly harmed as a result of defendants' false and misleading statements. There is no antagonism between Movant's interests and those of the other members of the Class and there is nothing to indicate that Movant will do anything but vigorously pursue the claims on behalf of the Class. Further, as demonstrated below, Movant's proposed counsel is qualified, experienced, and able to conduct this complex litigation in an efficient, effective, and professional manner. Lastly, Movant is not subject to unique defenses and there is no evidence that Movant seeks anything other than the greatest recovery for the Class consistent with the merits of the claims.

Accordingly, Movant satisfies Rule 23's typicality and adequacy requirements for the purposes of this Motion.

### B.    Movant's Selection of Counsel Should Be Approved

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), the lead plaintiff shall, subject to court approval, select and retain counsel to represent the class he seeks to represent.  In that regard, Movant, as the presumptively most adequate plaintiff, has selected Robbins to serve as Lead Counsel and Johnson Fistel to serve as Liaison Counsel for the Class.

Robbins is a nationally recognized shareholder rights firm focusing its practice on complex shareholder litigation.  *See* Berens Decl., Exhibit D.  Robbins attorneys have secured impressive recoveries in shareholder rights' actions.  For example, Robbins served as Lead Counsel in the securities fraud class action *In re Titan, Inc. Sec. Litig.*, No. 04-CV-0676-LAB (NLS) (S.D. Cal. Dec. 20, 2005), which settled for $61.5 million.

Johnson Fistel has served as Liaison Counsel in previous securities and complex stockholder actions, and is capable of doing so here.  *See* Berens Decl., Exhibit E.  As such, the Court should approve Movant's selection of Robbins as Lead Counsel and Johnson Fistel as Liaison Counsel for the Class.

Thus, the Court may be assured that, in the event this Motion is granted, the members of the Class will receive the highest caliber of legal representation available.

### IV.    CONCLUSION

Movant has satisfied each of the PLSRA's requirements for appointment as Lead Plaintiff. As such, Movant respectfully requests that the Court appoint him as Lead Plaintiff, approve his selection of Robbins as Lead Counsel and Johnson Fistel as Liaison Counsel for the Class, and grant such other relief as the Court may deem just and proper.

Dated:  October 17, 2022

Respectfully submitted,

JOHNSON FISTEL, LLP
JEFFREY A. BERENS


_____/s/Jeffrey A. Berens_____
JEFFREY A. BERENS

2373 Central Park Blvd., Ste. 100
Denver, CO 80238
Telephone: (303) 861-1764
E-mail: jeffb@johnsonfistel.com

*[Proposed] Liaison Counsel for Lead Plaintiff*

MICHAEL I. FISTEL
Murray House
40 Powder Springs Street
Marietta, GA 30064
Telephone: (470) 632-6000
Facsimile: (770) 200-3101
E-mail: michaelf@johnsonfistel.com


ROBBINS LLP
BRIAN J. ROBBINS
CRAIG W. SMITH
GREGORY E. DEL GAIZO
5040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsllp.com
        csmith@robbinsllp.com
        gdelgaizo@robbinsllp.com

*[Proposed] Lead Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 17, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Court's electronic mail notice list.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed October 17, 2022.

/s/Jeffrey A. Berens
JEFFREY A. BERENS
