**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:22-cv-02105-WJM-MEH

CHRISTOPHER KAIN, Individually and on Behalf of All Others Similarly Situated,

       Plaintiff,

   v.

AMPIO PHARMACEUTICALS, INC.
MICHAEL A. MARTINO,
MICHAEL MACALUSO, and
HOLLI CHEREVKA,

       Defendants.

---

**MOTION OF TAO WANG AND SYNWORLD TECHNOLOGIES CORPORATION
FOR APPOINTMENT AS LEAD PLAINTIFFS
AND APPROVAL OF LEAD PLAINTIFFS' SELECTION OF LEAD COUNSEL**

---

**TABLE OF CONTENTS**

MEMORANDUM OF LAW ............................................................................................... 2

PRELIMINARY STATEMENT ...................................................................................... 2

FACTUAL BACKGROUND........................................................................................... 3

ARGUMENT .................................................................................................................. 8

I.      MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFFS FOR THE CLASS ........ 8

        A.      The PSLRA's Provisions Concerning The Appointment Of A Lead Plaintiff ....... 8

        B.      Under The PSLRA, Movants Should Be Appointed Lead Plaintiffs ..................... 9

                1.      Movants Filed a Timely Motion ................................................... 9

                2.      Movants Have the Largest Financial Interest in the Relief Sought
                        by the Class ............................................................................. 10

                3.      Movants Meet Rule 23's Typicality and Adequacy Requirements .......... 11

II.     MOVANTS' SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL
        SHOULD BE APPROVED ............................................................................ 14

CONCLUSION.............................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*In re Crocs, Inc. Sec. Litig.*,
   No. 07-cv-02351-REB-KLM, 2008 WL 4298316 (D. Colo. Sept. 17, 2008) .........9, 11, 12, 13

*Faris v. Longtop Fin. Techs. Ltd.*,
   No. 11 Civ. 3658(SAS), 2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011) ...................................10

*In re Heritage Bond Litig.*,
   No. 02-ML-1475 DT, 2004 WL 1638201 (C.D. Cal. July 12, 2004)......................................12

*In re Level 3 Commc'ns, Inc. Sec. Litig.*,
   No. 09-cv-00200-PAB-CBS, 2009 WL 10684924 (D. Colo. May 4, 2009) .............................8

*Mishkin v. Zynex, Inc.*,
   No. 09-cv-00780-REB-KLM, 2010 WL 749864 (D. Colo. Mar. 3, 2010).........................9, 13

*Pace v. Quintanilla*,
   No. SACV 14-2067-DOC, 2014 WL 4180766 (C.D. Cal. Aug. 19, 2014) .............................11

*Query v. Maxim Integrated Prods., Inc.*,
   558 F. Supp. 2d 969 (N.D. Cal. 2008) ...................................................................................11

*Reitan v. China Mobile Games & Entm't Grp.*,
   68 F. Supp. 3d 390 (S.D.N.Y. 2014...................................................................................14

*In re Ribozyme Pharm., Inc. Sec. Litig.*,
   192 F.R.D. 656 (D. Colo. 2000) .......................................................................................11, 12

*Richardson v. TVIA, Inc.*,
   No. C 06 06304 RMW, 2007 WL 1129344 (N.D. Cal. Apr. 16, 2007)..................................11

*Takara Trust v. Molex, Inc.*,
   229 F.R.D. 577 (N.D. Ill. 2005)............................................................................................11

**Statutes**

15 U.S.C. § 78u-4(a) ........................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 23(a) .............................................................................................12

i

Anne Cullen, More Judges Are Demanding Diversity Among Class Counsel,
    Law360 (July 16, 2020) ...............................................................................................15

Ralph Chapoco, Calls for Lawyer Diversity Spread to Complex Class Litigation,
    Bloomberg Law (July 30, 2020) ..................................................................................15

**PLEASE TAKE NOTICE** that on a date and time as may be set by the Court, Tao Wang and his wholly-owned company, SynWorld Technologies Corporation ("Movants"), will respectfully move this Court, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), for entry of an Order appointing Movants as Lead Plaintiffs in the above-captioned action and approving Movants' selection of Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel for the Class.

This motion is based on the accompanying Memorandum of Law in support hereof, the Declaration of James M. Wilson, Jr. and exhibits filed therewith, the pleadings and other filings herein, and such other written and oral argument as may be permitted by the Court.

For the foregoing reasons, Movants respectfully request that the Court: appoint Movants as Lead Plaintiffs pursuant to the PSLRA; approve Faruqi & Faruqi, LLP as Lead Counsel for the Class; and grant such other and further relief as the Court may deem just and proper.

Dated:  October 17, 2022

Respectfully submitted,

**FARUQI & FARUQI, LLP**

By:    */s/ James M. Wilson, Jr.*
        James M. Wilson, Jr.

James M. Wilson, Jr.
Robert W. Killorin (*pro hac vice* forthcoming)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email:  jwilson@faruqilaw.com
          rkillorin@faruqilaw.com

*Attorneys for [Proposed] Lead Plaintiffs and
[Proposed] Lead Counsel for the putative Class*

1

## MEMORANDUM OF LAW

Movants hereby move this Honorable Court for an order: pursuant to Section 21D(a)(3)(B) of the Exchange Act, as amended by the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B), for the entry of an order appointing Movants as Lead Plaintiffs for the Action (defined below) and approving Movants' selection of the Faruqi Firm as Lead Counsel.[1]

Movants have timely filed their motion and they are the "most adequate plaintiff" under the rules of the PSLRA. Moreover, Movants meet the requirements of Rule 23 of the Federal Rules of Civil Procedure for the purposes of this motion as their claims are typical of the other purported class members' claims and they will fairly and adequately represent the putative class. Movants also seek the Court's approval of their selection of the Faruqi Firm, a law firm with substantial experience in prosecuting securities fraud class actions, as Lead Counsel, pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

## PRELIMINARY STATEMENT

The Action presently pending before this Court is brought on behalf of those who purchased or otherwise acquired Ampio Pharmaceuticals, Inc. ("Ampio" or the "Company") common stock between December 29, 2020 and August 3, 2022, inclusive (the "Class Period"), which seek to recover damages caused by Defendants' violations of Sections 10(b) and 20(a) of the Exchange Act.

With respect to the appointment of a lead plaintiff to oversee the Action, Congress

---

[1]    Unless stated otherwise, the following conventions apply: (1) all citations, internal quotation marks and footnotes are omitted; (2) all emphases are added; and (3) all "Ex. _" references are to the exhibits attached to the Declaration of James M. Wilson, Jr. in Support of Movants' Motion for Appointment as Lead Plaintiffs and Approval of Lead Plaintiffs' Selection of Lead Counsel filed herewith.

established a presumption in the PSLRA that requires the Court to appoint the "most adequate plaintiff" as the lead plaintiff for the Action. 15 U.S.C. § 78u-4(a)(3)(B)(i).  The "most adequate plaintiff" is the person who has the "largest financial interest in the relief" and who also satisfies Rule 23's typicality and adequacy requirements for class representatives. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

With losses of $3,455,790.72, Movants, to the best of counsel's knowledge, have the largest financial interest in the litigation of any movant. Movants also satisfy Rule 23's typicality and adequacy requirements. Movants' claims are typical of the Class's claims because they suffered losses on their Ampio investment as a result of Defendants' false and misleading statements. Further, Movants have no conflict with the Class and will adequately protect the Class's interests given their significant stake in the litigation and their conduct to date in prosecuting the litigation, including their submission of the requisite certifications and selection of experienced class counsel. Accordingly, Movants are the presumptive Lead Plaintiffs.

Lastly, if appointed Lead Plaintiffs, Movants are entitled to select, subject to the Court's approval, lead counsel to represent the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Movants have engaged the Faruqi Firm for this purpose. The Faruqi Firm is an appropriate selection to serve as Lead Counsel because it is a highly experienced firm with substantial securities class action experience.

For the reasons summarized above and those explained more fully below, Movants' motion should be granted in its entirety.

## FACTUAL BACKGROUND

Ampio is incorporated under the laws of Delaware, with its principal executive offices located

3

in Englewood Colorado. ¶ 13. Ampio is a pre-revenue stage biopharmaceutical company focused on the research, development, and advancement of immunomodulatory therapies for the treatment of pain from osteoarthritis. *Id*. The Company's lead product candidate is called Ampion, which purportedly has unique immunomodulatory action and anti-inflammatory effects. *Id*. Ampion may provide treatment for individuals with inflammatory conditions including, but not limited to, osteoarthritis of the knee ("OAK") and the widespread inflammation associated with COVID-19 infection. *Id*.

On November 10, 2010, Ampio filed its Registration Statement on Form S-1 with the SEC. ¶ 18. The Registration Statement announced the Company's generation of a lead product candidate, Ampion, which was being developed as a new molecular entity ("NME") for inflammatory diseases. *Id*. The Company stated that it planned to conduct four proof of concept studies of the NME in India or Australia, the Phase I/II trials. *Id*. In addition to the four proof of concept studies, in late 2010, Ampio announced that it was preparing to seek approval for a Phase II double-blind placebo-controlled clinical study for Ampion. ¶ 19.

On October 28, 2011, the Company issued a press release announcing the results of its Ampion-In-Knee Australian clinical trial. ¶ 20. The press release stated that the drug was shown to be well tolerated. *Id*. On June 12, 2012, the Company announced that a month earlier, on May 10, 2012, the Company had completed a pre-Investigation New Drug ("IND") meeting with the FDA and an agreement had been reached on the design of a U.S. trial for Ampion to treat OAK. ¶ 21. Later in 2012, on November 14, 2012, the Company disclosed that it had received conduct guidance from the Center for Biologics Evaluation and Research ("CBER") division of the FDA regarding both open label and placebo-controlled trials to be conducted over the coming year. ¶ 22.

4

On April 2013, the Company received FDA acceptance of its IND to treat to OAK in fifteen patients in a Phase III "Spring Study" also known as "AP-003-A." ¶ 23. This study resulted in positive results according to a press release issued on August 14, 2013. *Id*. On December 2, 2013, the Company issued another press release announcing that it had received correspondence from the FDA confirming the acceptance of the Spring Study as a pivotal trial. ¶ 24. The correspondence from the FDA also provided guidance for the design of the second and final trial of Ampion for the treatment of OAK which was slated to begin in January 2014. *Id*. The second pivotal trial, known as the Phase III "Stride Study" or "AP008" was completed in early 2015. ¶ 25. The Stride Study did not reach its primary endpoint, despite "a statistically significant reduction in pain compared to baseline for patients receiving Ampion." *Id*.

In July 2015, the Company held an investor call announcing its meeting with the FDA. ¶ 27. During the call, it was disclosed that Ampio had agreed to a Special Protocol Assessment ("SPA") which is a written agreement that outlines the design and size of a clinical trial to form the primary basis of efficacy for a Biologics License Application ("BLA") filing. *Id*. The terms of the SPA required that Ampio complete a second Phase III pivotal trial of Ampion (the "PIVOT Trial"). *Id*. The PIVOT trial commenced on September 22, 2015, with Defendant Michael Macaluso ("Macaluso") assuring shareholders that "this second pivotal trial is clinically identical to the previously successful Spring Study, which was confirmed by the agency as one of the two pivotal trials required for approval" and "[w]ith positive results and an SPA, Ampion™ has a clearly defined path to market." ¶ 28.

The results of the PIVOT trial were announced in June 2016 and revealed that the study did not meet its primary endpoint. ¶ 29. The Company met with the CBER division again in September

5

and December 2016 to seek guidance on Ampio's path to obtaining a BLA. ¶ 30. In June 2019, the company received another SPA from the FDA for an additional Phase II trial titled "A Randomized, Controlled, Double-Blind Study to evaluate the Efficacy and Safety of an Intra-Articular Injection of Ampion in Adults with Pain Due to Severe Osteoarthritis of the Knee" (the "AP-013 Study"). ¶ 31. On March 24, 2020, at the recommendation of the Company's Safety Monitoring Committee, patient enrollment for the AP-013 study was closed as a result of the COVID-19 pandemic outbreak. ¶ 32. Less than a month later, the Company paused all activity relating to the AP-013 study. *Id*.

On December 29, 2020, the Company issued a press release regarding feedback it received from the FDA in response to the Company's proposed modifications to the SPA. ¶ 34. Ampio claimed that the FDA permitted the Company to "complete the [AP-013] study without re-running the trial" and that such options "give us the opportunity to provide additional evidence to support the use of existing data and/or add more patients to the trial." *Id*. Then, during Ampio's fourth quarter and year-ended 2020 earnings conference call, Defendant Holli Cherevka ("Cherevka") stated that Ampion had been shown to reduce inflammation. ¶ 35.

On May 5, 2021, the Company issued a press release stating a "[p]ositive FDA response provides guidance on multiple pathways forward on paused AP-013 Phase III trial in osteoarthritis of the knee (OAK)." ¶ 36. Defendant Macaluso also commented on this news, stating that the FDA response provided flexibility for maintaining an SPA. *Id*.

On June 16, 2021, Defendant Macaluso issued a further positive statement regarding the effectiveness of Ampion. ¶ 37. Macaluso stated that the FDA had provided written confirmation that the AP-003-A study provided evidence of effectiveness in Ampion. *Id*. On August 4, 2021, during the Company's second quarter 2021 earnings call, Macaluso announced that the Company had

decided to unblind the data from the AP-013 study. ¶ 38. Macaluso defended the decision by stating that the purpose of the move was to eliminate any bias from the pandemic and went on to state that the data from the trial would not be released until it had been properly validated. *Id*.

On November 10, 2021, the Company filed its Quarterly Report on Form 10-Q for the quarter ended September 30, 2021 with the SEC. ¶ 39. The filing assured investors that the company had sufficient liquidity to fund operations through the first quarter of 2023, but warned that the Company expected to raise additional capital in the near and long-term. *Id*. On March 2, 2022, the Company announced that it had submitted a Type C meeting request to the FDA to meet with the CBER division regarding the development and review of Ampion. ¶ 42. It was revealed that the FDA had recommended that Ampio conduct a sensitivity analysis to determine if the COVID-19 pandemic affected the AP-013 study. *Id*.

The Complaint alleges that Ampio failed to disclose to investors that it had: (i) inflated the Company's true ability to successfully file a BLA for Ampion; (ii) inflated the results of the AP-013 study and the timing of unblinding the data from the AP-013 study; and (iii) that, as a result of the foregoing, Defendants' statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis. ¶ 43. The truth began to emerge on April 20, 2022, when the Company issued a press release providing a regulatory update that the FDA had responded negatively to its Type C meeting request. ¶ 44. Specifically, the press release stated that the FDA did not agree with the Company's proposed changes to the population sample for the primary endpoint analysis. *Id*. On this news, the Company's share price fell 26.47%. *Id*. Then, on May 16, 2022, the Company issued a press release announcing that an independent special committee of the Board was in the process of conducting an internal investigation related to the AP-013 study. ¶ 46.

7

On this news, the Company's share price fell 10%. *Id*.

Finally, on August 3, 2022, Ampio issued a press release containing a letter disclosing the results of the previously announced investigation. ¶ 47. The press release revealed that the Defendants "and senior staff were aware, at the time of the pre-protocol interim analysis in March 2020, that the AP-013 trial did not demonstrate efficacy for Ampion on its co-primary endpoints of pain and function; and that these persons did not fully report the results of the AP-013 trial and the timing of the unblinding of data from the AP-013 trial." ¶ 48. Additionally, the investigation uncovered "that certain Ampio personnel, including a former executive officer and certain former directors, facilitated the provision of Ampion for unauthorized use." ¶ 49. On this news, the Company's share price fell to $0.10 per share on August 3, 2022, representing 96.25% drop from a high of $2.76 per share.. ¶ 50.

Through the Action, Movants seek to recover for themselves and absent Class members the substantial losses that were suffered as a result of Defendants' false and misleading statements.

## ARGUMENT

### I. MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFFS FOR THE CLASS

#### A. The PSLRA's Provisions Concerning The Appointment Of A Lead Plaintiff

The PSLRA governs the appointment of a Lead Plaintiff for "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§ 78u-4(a)(1), (3). It provides that within 20 days of the filing of the action, the plaintiff is required to publish notice in a widely circulated business-oriented publication or wire service, informing class members of their right to move the Court, within 60 days of publication, for appointment as Lead Plaintiff. *See In re Level 3 Commc'ns, Inc. Sec. Litig.*, No. 09-cv-00200-PAB-

CBS, 2009 WL 10684924, at \*1 (D. Colo. May 4, 2009) (citing 15 U.S.C. § 78u-4(a)(3)(A)(i)(II)).

Under 15 U.S.C. § 78u-4(a)(3)(B)(i), the Court is then to consider any motion made by class members and is to appoint as Lead Plaintiff the movant that the Court determines to be "most capable of adequately representing the interests of class members[.]" Thus, step two involves establishing a rebuttable presumption that the "most adequate plaintiff" is the person who: (1) has filed the complaint or made a timely motion for lead plaintiff; (2) possesses the largest financial interest in the litigation; and (3) satisfies the requirements of Federal Rule of Civil Procedure 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Mishkin v. Zynex, Inc.*, No. 09-cv-00780-REB-KLM, 2010 WL 749864, at \*1-2 (D. Colo. Mar. 3, 2010) (describing the PSLRA's three-step competitive process for determining the "most adequate plaintiff"); *In re Crocs, Inc. Sec. Litig.*, No. 07-cv-02351-REB-KLM, 2008 WL 4298316, at \*1-2 (D. Colo. Sept. 17, 2008) (same).

Once it is determined who among the movants seeking appointment as Lead Plaintiff is the presumptive Lead Plaintiff, the presumption can be rebutted only upon proof by a class member that the presumptive Lead Plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Mishkin*, 2010 WL 749864, at \*2.

**B.      Under The PSLRA, Movants Should Be Appointed Lead Plaintiffs**

As discussed below, Movants should be appointed Lead Plaintiffs because all of the PSLRA's procedural hurdles have been satisfied, Movants hold the largest financial interest of any movant, and they otherwise satisfy Rule 23's typicality and adequacy requirements.

**1.      Movants Filed a Timely Motion**

Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the first plaintiff to file a complaint was required

to publish notice of the complaint within twenty (20) days of its filing. Christopher Kain filed the first action on August 17, 2022, and his counsel published notice of the lead plaintiff deadline via *BusinessWire* that same day. *See* Ex. A; *Faris v. Longtop Fin. Techs. Ltd.*, No. 11 Civ. 3658(SAS), 2011 WL 4597553, at *3 (S.D.N.Y. Oct. 4, 2011) (finding publication in *Business Wire* sufficient to satisfy the PSLRA's notice requirement). Consequently, any member of the proposed Class was required to seek to be appointed Lead Plaintiff within 60 days after publication of the notice (*i.e.*, on or before October 17, 2022).[2] *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Thus, Movants' motion is timely filed.

Additionally, pursuant to Section 21D(a)(2) of the Exchange Act, Movants timely signed and submitted the requisite certification, identifying all of their relevant transactions in Ampio securities during the Class Period, and detailing their suitability to serve as Lead Plaintiffs in this case. *See* Ex. B. Therefore, the PSLRA's procedural requirements have been met.

> **2.     Movants Have the Largest Financial Interest in the Relief Sought by the Class**

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the person with the largest financial interest in the relief sought by the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

Although the PSLRA is silent as to the methodology courts are to use in determining which movant has the largest financial interest in the relief sought, courts in this Circuit and nationwide typically look to four factors in the inquiry: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended

---

[2]     Because the 60th day fell on Sunday, October 16, 2022, Fed. R. Civ. P. 6(a)(1) extended the deadline to Monday, October 17, 2022.

during the class period; and (4) the approximate losses suffered during the class period." *See In re Ribozyme Pharm., Inc. Sec. Litig.*, 192 F.R.D. 656, 660-61 (D. Colo. 2000); *Query v. Maxim Integrated Prods., Inc.*, 558 F. Supp. 2d 969, 973 (N.D. Cal. 2008); *see also In re Crocs, Inc.*, 2008 WL 4298316, at *2 (citing *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998)). Courts have placed the most emphasis on the last of the four factors: the approximate losses suffered by the movant. *See Pace v. Quintanilla*, No. SACV 14-2067-DOC (RNBx), 2014 WL 4180766, at *2 (C.D. Cal. Aug. 19, 2014) ("The PSLRA does not specify how to calculate the 'largest financial interest,' but the approximate losses suffered are the most determinative."); *Richardson v. TVIA, Inc.*, No. C 06 06304 RMW, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16, 2007) ("[C]ourts consider the fourth factor, the approximate losses suffered, as most determinative in identifying the plaintiff with the largest financial loss."); *Takara Trust v. Molex, Inc.*, 229 F.R.D. 577, 579 (N.D. Ill. 2005) ("[M]ost courts simply determine which potential lead plaintiff has suffered the greatest total losses.").

Overall, during the Class Period, Movants acquired 5,366,319 net shares and 5,441,219 total shares of Ampio common stock, expended $3,871,489.53 in net funds, and suffered losses of $3,455,790.72, when calculated using a last in, first out methodology. *See* Ex. B. Movants are unaware of any other movant with a larger financial interest in the outcome of this litigation.

### 3.    Movants Meet Rule 23's Typicality and Adequacy Requirements

The PSLRA also requires that in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must satisfy the requirements of Federal Rule of Civil Procedure 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). When assessing a potential Lead Plaintiff, only Rule 23(a)'s typicality and adequacy requirements are relevant. *See In re Crocs, Inc.*, 2008 WL

11

4298316, at \*2 ("As for the requirement that the lead plaintiff otherwise satisfy the requirements of Rule 23, only two of the four requirements of Rule 23(a)—typicality and adequacy—impact the analysis of the lead plaintiff issue.").

The "typicality requirement" is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). Typicality exists where the "injury and the conduct are sufficiently similar." *In re Crocs, Inc.*, 2008 WL 4298316, at \*2. Although different plaintiffs may invoke different factual circumstances, typicality is present "so long as the claims of the class representative and class members are based upon the same legal or remedial theory." *Id*; *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2004 WL 1638201, at \*7 (C.D. Cal. July 12, 2004) ("Courts have held that if the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of the factual differences.").

Movants' claims are clearly typical of the Class's claims. Movants acquired Ampio securities during the Class Period, suffered damages as a result of the false and misleading statements made by Defendants, and possesses claims against Defendants under the federal securities laws. Because the factual and legal bases of Movants' claims are similar to those of the Class's claims, they necessarily satisfies the typicality requirements. *See In re Ribozyme*, 192 F.R.D. at 658 (finding plaintiff group typical where it: (1) purchased defendant stock during the relevant time period; (2) at prices alleged to be artificially inflated by the false and misleading statements issued by Defendants; (3) causing damages).

With respect to adequacy, Rule 23(a)(4) requires that the representative party will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The requirement of adequacy

12

is satisfied on proof of (1) the absence of potential conflict between the named plaintiffs and the class members and (2) that counsel chosen by the representative parties is qualified, experienced and able to vigorously conduct the proposed litigation. *See In re Crocs, Inc.*, 2008 WL 4298316, at \*2.

Movant Tao Wang is moving in conjunction with his wholly-owned company, Movant SynWorld Technologies Corporation, which also invested in Ampio common stock. Movant Tao Wang is submitting a PSLRA Certification listing his individual transactions and a separate PSLRA Certification for Movant SynWorld Technologies Corporation listing SynWorld's transactions. As evidenced by the representations in his personal certification, and the certification of SynWorld Technologies Corporation, *see* Ex. B, Movants' interests are perfectly aligned with—and by no means antagonistic to—the Class. *See Mishkin*, 2010 WL 749864, at \*2 (movants' certifications evidenced adequacy to serve as lead plaintiff). Contemporaneously with the filing of the instant motion, Movant Tao Wang has submitted a Declaration with additional information about himself, his work and educational background, and experience investing, clearly demonstrating his adequacy to represent class members. Movant Tao Wang has a degree in Computer Science from Beijing Polytechnic University and a strong business background. Ex. C. He has owned and managed his own company, Movant SynWorld Technologies Corporation, for approximately three years. *Id*. He has been investing for approximately two and a half years and manages his own investments. *Id*.

Movants have also selected and retained highly competent counsel to litigate the claims on behalf of himself and the Class. As explained below in Section II, the Faruqi Firm is highly regarded for their experience, knowledge, and ability to conduct complex securities class action litigation. *See* Ex. D. Consequently, Movants are more than adequate to represent the Class and have every incentive to maximize the Class's recovery.

In light of the foregoing, Movants respectfully submits that they are the presumptive Lead Plaintiffs and should be appointed Lead Plaintiffs for the Action.

## II.    MOVANTS' SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL SHOULD BE APPROVED

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the Lead Plaintiffs are entitled to select and retain Lead Counsel for the Class, subject to the Court's approval. Movants have selected the Faruqi Firm to be Lead Counsel for the Class. The Faruqi Firm is a minority-owned and woman-owned law firm, and, as reflected in the firm's resume, possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions.[3] The Faruqi Firm is also currently litigating several prominent securities class actions.[4]

---

[3]    *See* Ex. D; *see also Reitan v. China Mobile Games & Entm't Grp., Ltd.*, 68 F. Supp. 3d 390, 401 (S.D.N.Y. 2014) (appointing the Faruqi Firm as sole lead counsel and noting: "Faruqi & Faruqi has extensive experience in the area of securities litigation and class actions. The firm's resume indicates that it has litigated more than ten prominent securities class actions since its founding in 1995. Faruqi & Faruqi achieved successful outcomes in many of these cases."). For example, the Faruqi Firm has previously obtained significant recoveries for injured investors. *See, e.g., Rudani v. Ideanomics, Inc., et al.*, No. 1:19-cv-06741-GBD (S.D.N.Y.) (where, as sole lead counsel, the firm obtained final approval of $5 million settlement); *Larkin v. GoPro, Inc.*, No. 4:16-cv-06654-CW (N.D. Cal. 2019) (where, as sole lead counsel, the firm obtained final approval of $6.75 million settlement); *In re Avalanche Biotechnologies Sec. Litig.*, No. 3:15-cv-03185-JD (N.D. Cal. 2018) (appointed as sole lead counsel in the federal action, and together with lead counsel in a parallel state action, obtained final approval of a $13 million global settlement); *In re Geron Corp., Sec. Litig.*, No. 3:14-CV-01224-CRB (N.D. Cal. 2017) (where, as sole lead counsel, the Faruqi Firm obtained final approval of a $6.25 million settlement); *In re Ebix, Inc. Sec. Litig.*, No. 1:11-CV-02400-RWS (N.D. Ga. 2014) (where the Faruqi Firm, as sole lead counsel for the class, secured a $6.5 million settlement); *In re United Health Grp. Inc. Deriv. Litig.*, No. 27 CV 06-8085 (Minn. 4th Jud. Dist. 2009) (where the Faruqi Firm, as co-lead counsel, obtained a recovery of more than $930 million for the benefit of the Company and negotiated important corporate governance reforms designed to make the nominal defendant corporation a model of responsibility and transparency); and *In re Purchase Pro Inc. Sec. Litig.*, No. 2:01-cv-0483-JLQ-PAL (D. Nev. 2006) (where the Faruqi Firm, as co-lead counsel for the class, secured a $24.2 million settlement).

[4]    *See, e.g., In re Revance Therapeutics, Inc. Sec. Litig.*, No. 5:21-cv-09585-EJD (N.D. Cal.) (appointed sole lead counsel for the class); *In Re Peloton Interactive, Inc. Sec. Litig.*, No. 1:21-cv-

Further, the Faruqi Firm is a minority-owned and woman-owned[5] law firm, and, as reflected in the firm's resume, possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions. The Faruqi Firm has a proven track record of successfully representing its clients in these matters and is nationally recognized for its excellence. Not only does the firm have the experience and expertise necessary to obtain significant successes for its clients, it has a demonstrated commitment to diversity and inclusion that clients and judges increasingly seek from the bar.[6] Class members in securities class actions have diverse backgrounds, and that diversity should be reflected in class counsel. Currently, approximately 40% of the firm's partnership positions are held by women and minorities, and the firm is committed to growing this figure in the coming years. *See* https://www.faruqilaw.com /our-attorneys. The Faruqi Firm is proud to be made up of such a diverse group of legal professionals and strongly believes that its clients are better served because of it.

## CONCLUSION

For the foregoing reasons, Movants respectfully request that the Court appoint them as Lead Plaintiffs for the Action; approve their selection of the Faruqi Firm as Lead Counsel for the Action;

02369-CBA-PK (S.D.N.Y.) (same); *Halman Aldubi Provident and Pension Funds Ltd. v. Teva Pharms. Indus. Ltd.*, No. 20-4660-KSM (E.D. Pa.) (same); *In re Allergan PLC Sec. Litig.*, No. 18 Civ. 12089 (CM) (GWG) (S.D.N.Y.) (same); *Lowthorp v. Mesa Air Group, Inc.*, No. 2:20-cv-00648-MTL (D. Ariz.) (same); *In re Tahoe Res., Inc. Sec. Litig.*, No. 2:17-cv-01868-RFB-NJK (D. Nev.) (same); and *In re Synergy Pharm., Inc. Sec. Litig.*, No. 1:18-cv-00873-AMD-VMS (E.D.N.Y.) (same).

[5]     *See* Ex. E (certificate from Women's Business Enterprise National Council certifying the Faruqi Firm as a woman-owned business).

[6]     *See* Anne Cullen, More Judges Are Demanding Diversity Among Class Counsel, Law360 (July 16, 2020), https://www.law360.com/articles/1292926/more-judges-are-demanding-diversity-among-class-counsel; Ralph Chapoco, Calls for Lawyer Diversity Spread to Complex Class Litigation, Bloomberg Law (July 30, 2020), https://www.bloomberglaw.com/document/ XA1TPNEG000000?bna_news_filter=social-justice&jcsearch=BNA.

15

and grant such other relief as the Court may deem just and proper.

Dated:  October 17, 2022                     Respectfully submitted,

                                             By: s/ James M. Wilson, Jr.


                                             James M. Wilson, Jr.
                                             Robert W. Killorin (application for admission
                                             forthcoming)
                                             **FARUQI & FARUQI, LLP**
                                             685 Third Avenue, 26th Floor
                                             New York, NY 10017
                                             Telephone: 212-983-9330
                                             Facsimile: 212-983-9331
                                             E-mail: jwilson@faruqilaw.com
                                             E-mail: rkillorin@faruqilaw.com


                                             *Attorneys for [Proposed] Lead Plaintiffs Tao Wang,*
                                             *SynWorld Technologies Corporation and [Proposed]*
                                             *Lead Counsel for the putative Class*

**CERTIFICATE OF SERVICE**

I, James M. Wilson, Jr., hereby certify that on October 17, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the Court's Electronic Mail Notice List.

*s/ James M. Wilson, Jr.*
James M. Wilson, Jr.

1