IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 22-cv-2105-WJM-MEH

CHRISTOPHER KAIN, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

AMPIO PHARMACEUTICALS, INC.,
MICHAEL A. MARTINO,
MICHAEL MACALUSO, and
HOLLI CHEREVKA,

    Defendants.

## ORDER APPOINTING LEAD PLAINTIFF AND APPROVING LEAD COUNSEL

This matter is before the Court on the following motions:

- Motion of Tao Wang and SynWorld Technologies Corporation (together, "Wang/SynWorld") for Appointment as Lead Plaintiffs and Approval of Lead Plaintiffs' Selection of Lead Counsel (ECF No. 23);

- Motion of Lynn Hedeman ("Hedeman") for Appointment as Lead Plaintiff and Approval of Lead Counsel (ECF No. 19);

- Motion of Padme Management Corp. For Appointment As Lead Plaintiff and Approval of Selection of Counsel (ECF No. 18) and the Notice of Non-Opposition of Padme Management Corp. to Competing Lead Plaintiff Motions (ECF No. 28);

- Notice of Motion and Motion of Punit Kohli for Appointment as Lead Plaintiff and Approval of Counsel (ECF No. 22) and the Notice of Non-

      Opposition to Competing Motions for Appointment as Lead Plaintiff and Approval of Counsel (ECF No. 29); and

- Movant Matthew Shipley's Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel (ECF No. 20) and the Notice of Non-Opposition to Competing Motions (ECF No. 27).

The motions are fully briefed. For the following reasons, the Court appoints Wang/SynWorld as Lead Plaintiffs and Faruqi & Faruqi, LLP (also referred to as "the Faruqi Firm") as Lead Counsel.

### I. BACKGROUND[1]

This is a federal securities class action brought on behalf of all persons that purchased or otherwise acquired Ampio Pharmaceuticals, Inc. ("Ampio" or the "Company") common stock between December 29, 2020 and August 3, 2022, inclusive (the "Class Period"). (¶ 1.)

Ampio is a biopharmaceutical company purportedly focused on the research, development, and advancement of immunomodulatory therapies for the treatment of pain from osteoarthritis. (¶ 13.) The Company's lead product candidate, Ampion, purportedly has unique immunomodulatory action and anti-inflammatory effects, which may provide a treatment for individuals with inflammatory conditions including, but not limited to, severe osteoarthritis of the knee ("OAK"), osteoarthritis related to other joints (*i.e.*, hip, shoulder, ankle and hand), and the widespread inflammation associated with COVID-19 infection commonly referred to as "Long-COVID." (¶¶ 3, 13.)

---

[1] Citations to (¶ __), without more, are references to the Class Action Complaint for Violations of the Federal Securities Laws and Jury Trial Demand ("Complaint"). (ECF No. 1.)

From 2010 through approximately March 2022, Ampio conducted numerous clinical trials and analyses to determine Ampion's efficacy.  (¶ 4.)  The complaint alleges that Ampio confidently advertised that Ampion demonstrated a statistically significant decrease in pain associated in symptomatic moderate-severe OAK on numerous occasions.  (¶ 4.)   However, the Company failed to bring Ampion to market.  (¶ 4.)  On May 16, 2022, the Company announced that it had formed a special committee of the Ampio Board of Directors (the "Board") to conduct internal investigations focusing specifically on the statistical analysis of Ampio's AP-013 clinical trial and unauthorized provision of Ampion which had not yet been approved by the U.S. Food and Drug Administration ("FDA").  (¶ 5.)

Then, in pre-market hours on August 3, 2022, Ampio issued a press release containing a letter to stockholders disclosing that the individual Defendants "and senior staff were aware, at the time of the per-protocol interim analysis in March 2020, that the AP-013 trial did not demonstrate efficacy for Ampion on its co-primary endpoints of pain and function; and that these persons did not fully report the results of the AP-013 trial and the timing of unblinding of data from the AP-013 trial."  (¶ 6.)  On this news, the Company's share price dropped $0.06, or 35.38%, from the previous day's close, on greater than usual trading volume.  (¶ 6.)

Plaintiffs allege that as a result of Defendants' acts and omissions and the precipitous decline in the market value of the Company's securities, the class members have suffered significant losses and damages.  (¶ 7.)

On August 17, 2022, Plaintiff Christopher Kain brought this class action against Defendants Ampio Pharmaceuticals, Michael A. Martino, Michael Macaluso, and Holli

3

Cherevka for violations of sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78j(b) and §78t(a), and SEC Rule 10b-5, promulgated thereunder by the SEC, 17 C.F.R. §240.10b-5.  (¶¶ 2, 8.)

On September 8, 2022, the United States Magistrate Judge stayed this case pending the appointment of a lead plaintiff and the filing of an amended complaint. (ECF No. 15.)

## II. LEGAL STANDARD

The Private Securities Litigation Reform Act of 1995 ("PSLRA") sets forth "a procedure that governs the appointment of Lead Plaintiffs in 'each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure.'"  *In re Ribozyme Pharm., Inc. Sec. Litig.*, 192 F.R.D. 656, 657 (D. Colo. 2000) (quoting 15 U.S.C. § 78u-4(a)(1)).  Any member of the purported class may move the court to serve as Lead Plaintiff, but must do so within sixty days of the published notice of the potential class action.  15 U.S.C. § 78u-4(3)(A)(i)(II).  The Court must then appoint Lead Plaintiff no later than ninety days after the date the notice is published, or as soon as practicable after the Court has ruled on a motion to consolidate related actions.  *Id*. § 78u-4(3)(B)(i)–(ii).

In assigning a Lead Plaintiff, the PSLRA establishes "a rebuttable presumption that the 'most adequate plaintiff' is a person or group of persons that (1) either filed the complaint or made a motion in response to a notice, (2) has the largest financial interest in the relief sought, and (3) otherwise satisfies the requirements of Fed. R. Civ. P. 23." *Medina v. Clovis Oncology, Inc.*, 2016 WL 660133, at *3 (D. Colo. Feb. 18, 2016) (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)–(cc)).  "As for the requirement that the Lead

4

Plaintiff otherwise satisfy the requirements of Rule 23, only two of the four requirements of Rule 23(a)—typicality and adequacy—impact the analysis of the Lead Plaintiff issue." *Wolfe v. AspenBio Pharma, Inc.*, 275 F.R.D. 625, 627–28 (D. Colo. 2011). The PSLRA also provides that the Lead Plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." *Id*. § 78u-4(3)(B)(v). Accordingly, it is within the Court's discretion to approve appropriate Lead Counsel. *See In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, 2009 WL 4016635, at *2–3 (D. Colo. Nov. 18, 2009).

### III. ANALYSIS

While there were several motions for appointment as Lead Plaintiff listed above, after the dust settled, only two plaintiffs still vie for appointment as lead plaintiff: Hedeman (ECF No. 19) and Wang/SynWorld (ECF No. 23). Therefore, the Court will not discuss any further those motions which are now moot due to the filing of notices of non-opposition.

As the Court will explain in greater detail below, Hedeman identifies only one issue he believes is an obstacle to Wang/SynWorld serving as Lead Plaintiffs—that they "may be subject to disqualifying unique defenses because they have failed to disclose any business relationship with Ampio." (ECF No. 31 at 2.) He does not dispute that Wang/SynWorld's motion is timely, or that they have the largest financial interest—only that they may not possess typicality and adequacy due to this speculative business relationship. Accordingly, below the Court discusses the required factors but focuses its attention on typicality and adequacy.

**A.    Appointment of Lead Plaintiffs**

      1.    <u>Timeliness</u>

Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the first plaintiff to file a complaint was

5

required to publish notice of the complaint within twenty days of its filing. Kain filed the first action on August 17, 2022, and his counsel published notice of the lead plaintiff deadline via *Business Wire* that same day. (ECF No. 25-1; *see Faris v. Longtop Fin. Techs. Ltd.*, 2011 WL 4597553, at *3 (S.D.N.Y. Oct. 4, 2011) (finding publication in *Business Wire* sufficient to satisfy the PSLRA's notice requirement).) Consequently, any member of the proposed class was required to seek to be appointed Lead Plaintiff within 60 days after publication of the notice (*i.e.*, on or before October 17, 2022). *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Wang/Syn/World's motion was filed on October 17, 2022 and is therefore timely filed. (ECF No. 23.) Hedeman does not argue otherwise. (*See* ECF No. 31.)

        2.      <u>Financial Interest</u>

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the person with the largest financial interest in the relief sought by the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

During the Class Period, Wang/SynWorld acquired 5,366,319 net shares and 5,441,219 total shares of Ampio common stock, expended $3,871,489.53 in net funds, and suffered losses of $3,455,790.72, when calculated using a last in, first out methodology. (ECF No. 23 at 15; ECF No. 25-2.) Wang/SynWorld state that they are unaware of any other movant with a larger financial interest in the outcome of this litigation. (ECF No. 23 at 15.) In his response, Hedeman concedes that Wang/SynWorld claim a larger financial interest than he does (Hedeman suffered a financial harm of approximately $713,231.68). (ECF No. 19 at 5; ECF No. 31 at 2.) Therefore, Wang/SynWorld have the largest financial interest in the outcome of this litigation.

6

### 3. <u>Typicality and Adequacy</u>

The PSLRA also requires that in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must satisfy the requirements of Federal Rule of Civil Procedure 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). When assessing a potential Lead Plaintiff, only Rule 23(a)'s typicality and adequacy requirements are relevant. *See In re Crocs, Inc.*, 2008 WL 4298316, at *2 ("As for the requirement that the lead plaintiff otherwise satisfy the requirements of Rule 23, only two of the four requirements of Rule 23(a)—typicality and adequacy—impact the analysis of the lead plaintiff issue.").

The "typicality requirement" is satisfied when "the claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). Typicality exists where the "injury and the conduct are sufficiently similar." *In re Crocs, Inc.*, 2008 WL 4298316, at *2. Although different plaintiffs may invoke different factual circumstances, typicality is present "so long as the claims of the class representative and class members are based upon the same legal or remedial theory." *Id.*; *In re Heritage Bond Litig.*, 2004 WL 1638201, at *7 (C.D. Cal. July 12, 2004) ("Courts have held that if the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of the factual differences.").

Wang is moving in conjunction with his wholly owned company, SynWorld Technologies Corporation, which also invested in Ampio common stock. (ECF No. 23 at 17.) Wang submitted a PSLRA Certification listing his individual transactions and a separate PSLRA Certification for SynWorld listing SynWorld's transactions. As evidenced by the representations in his personal certification and the certification of

7

SynWorld, Wang/SynWorld's interests are perfectly aligned with—and by no means antagonistic to—the proposed class. (ECF No. 25-2; *see Mishkin v. Zynex, Inc.*, 2010 WL 749864, at *2 (D. Colo. Mar. 3, 2010) (movants' certifications evidenced adequacy to serve as lead plaintiff).) Like all members of the class, Wang/SynWorld allege that the Defendants violated the federal securities laws by disseminating false and misleading statements during the Class Period concerning Ampio's business, operations, and prospects. Wang/SynWorld, like all of the members of the class, purchased Ampio common stock and were damaged thereby. Consequently, Wang/SynWorld's interests are closely aligned with the other class members' and Wang/SynWorld's interests are therefore typical of the class. *Ribozyme*, 192 F.R.D. at 658–59.

With respect to their adequacy to serve as Lead Plaintiffs, Wang has submitted a declaration with additional information about himself, his work, and educational background, and experience investing, clearly demonstrating his adequacy to represent class members. (ECF No. 25-3.) Wang has a degree in Computer Science from Beijing Polytechnic University and a strong business background. (*Id.*) He has owned and managed his own company, SynWorld Technologies Corporation, for approximately three years. (*Id.*) He has been investing for approximately two and a half years and manages his own investments. (*Id.*) The Court finds that Wang/Synworld satisfy the adequacy requirement to serve as Lead Plaintiffs.

Given the foregoing, the Court finds that Wang/SynWorld satisfy the typicality and adequacy requirements of Rule 23(a) and are the presumptive Lead Plaintiffs.

    4.    <u>The PSLRA Presumption Has Not Been Rebutted</u>

Finally, the Court addresses Hedeman's primary objection to Wang/SynWorld

serving as Lead Plaintiffs.  Hedeman states that "he has reason to believe that SynWorld may have an undisclosed business relationship with Ampio, which would subject them to unique defenses."  (ECF No. 31 at 2–3.)  Specifically,

> counsel for Hedeman has discovered that SynWorld is in the business of assisting pharmaceutical companies in obtaining regulatory approval for their products in China. For example, on June 29, 2022, the publicly-traded company Jaguar Health, Inc. ("Jaguar") issued a press release announcing that Jaguar "has entered an exclusive license and services agreement with Ontario, Canada-based SynWorld Technologies Corporation (SynWorld) for the treatment of diarrhea in dogs in the China market with Jaguar's Canalevia® (crofelemer delayed-release tablets) prescription drug product.

(*Id.* at 3.)  Hedeman states that if Wang/SynWorld have a business relationship with Ampio and/or their transactions were related to this relationship, it would subject them to unique defenses not applicable to the class, such as arguing that any acquisition of Ampio stock pursuant to a business agreement with Ampio were not made in reliance on the integrity of the market price of Ampio shares.  (*Id.*)  Further, Hedeman speculates that Defendants could argue that a business relationship made Wang/SynWorld privy to non-public information about Ampio.  (*Id.* at 4.)  If Wang/SynWorld do not disclose whether they have a business relationship with Ampio, Hedeman states that he intends to seek discovery on the matter.  (*Id.* (citing 15 U.S.C. § 78u–4(a)(3)(B)(iv)).)

Wang/SynWorld directly state in their reply and supporting declaration that neither Wang nor SynWorld have any relationship with Ampio other than owning stock in the Company purchased in the open market based on publicly available information. (ECF No. 34 at 6–7; ECF No. 35-1 at 3.)  Additionally, they explain that SynWorld does not regularly engage in the business of assisting pharmaceutical companies in obtaining

9

regulatory approval for their products in China. (*Id.*) Wang/SynWorld clarify their involvement with Jaguar, which they state is a marketing agreement and the only agreement SynWorld has with any pharmaceutical company. (ECF No. 34 at 7.)

The PSLRA requires a competing movant to submit "proof" that the presumptive lead plaintiff is inadequate to represent the class and that their claims are not typical of the other class members. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). The statutory reference to "proof" excludes challenges based on speculation. *See In re Spectranetics Corp. Sec. Litig.*, 2009 WL 1663953, at *6 (D. Colo. June 15, 2009) (citation omitted) ("The presumption created by the statute may be rebutted only by proof that the presumptively most adequate plaintiff 'will not fairly and adequately protect the interests of the class' or 'is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'"). The Court concludes that Wang/SynWorld have provided sufficient evidence in response to Hedeman's objection to their ability to represent the class as Lead Plaintiffs. Therefore, Hedeman's request for discovery and an opportunity to respond are denied (ECF No. 33 at 3);[2] Wang/SynWorld are not subject to the unique defense issue that Hedeman raises.

## B.     Appointment of Lead Counsel

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the Lead Plaintiffs are entitled to select and retain Lead Counsel for the Class, subject to the Court's approval.

---

[2] In his reply, Hedeman states that he should be given an opportunity to respond to any evidence Wang/SynWorld provide and that he intends to file a motion for leave to file a sur-reply if necessary. (ECF No. 33 at 3.) The Court observes that having had the opportunity to review Wang/SynWorld's filings on the matter, Hedeman did not file a motion for leave to file a sur-reply. His decision not to do so bolsters the Court's conclusion that Wang/SynWorld meet the requirements of the PSLRA and should be appointed Lead Plaintiffs.

Wang/SynWorld have selected the Faruqi Firm to be Lead Counsel for the Class. (ECF No. 23 at 18–19.) Wang/SynWorld explain that the Faruqi Firm is a minority-owned and woman-owned law firm, and, as reflected in the firm's resume, possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions. (ECF No. 25-4.) The Faruqi Firm is also currently litigating several prominent securities class actions, including: *In re Revance Therapeutics, Inc. Sec. Litig.*, No. 5:21-cv-09585-EJD (N.D. Cal.) (appointed sole lead counsel for the class); *In Re Peloton Interactive, Inc. Sec. Litig.*, No. 1:21-cv- 02369-CBA-PK (S.D.N.Y.) (same); *Halman Aldubi Provident and Pension Funds Ltd. v. Teva Pharms. Indus. Ltd*., No. 20-4660-KSM (E.D. Pa.) (same); *In re Allergan PLC Sec. Litig.*, No. 18 Civ. 12089 (CM) (GWG) (S.D.N.Y.) (same); *Lowthorp v. Mesa Air Group, Inc.*, No. 2:20-cv- 00648-MTL (D. Ariz.) (same); *In re Tahoe Res., Inc. Sec. Litig.*, No. 2:17-cv-01868-RFB-NJK (D. Nev.) (same); and *In re Synergy Pharm., Inc. Sec. Litig.*, No. 1:18-cv-00873-AMD-VMS (E.D.N.Y.) (same).

The Court observes that the Faruqi Firm possesses extensive experience in securities litigation and has successfully prosecuted numerous federal securities class actions on behalf of injured investors. Accordingly, the Court finds that the Faruqi Firm is competent to serve as Lead Counsel and appoints the Faruqi Firm as Lead Counsel in this action.

### IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Motion of Tao Wang and SynWorld Technologies Corporation for Appointment as Lead Plaintiffs and Approval of Lead Plaintiffs' Selection of Lead

Counsel (ECF No. 23) is GRANTED;

2. Tao Wand and SynWorld Technologies Corporation are APPOINTED as Lead Plaintiffs;

3. Faruqi & Faruqi, LLP is APPROVED as Lead Counsel;

4. Motion of Lynn Hedeman for Appointment as Lead Plaintiff and Approval of Lead Counsel (ECF No. 19) is DENIED;

5. Motion of Padme Management Corp. For Appointment As Lead Plaintiff and Approval of Selection of Counsel (ECF No. 18) is DENIED AS MOOT in light of the Notice of Non-Opposition of Padme Management Corp. to Competing Lead Plaintiff Motions (ECF No. 28);

6. Notice of Motion and Motion of Punit Kohli for Appointment as Lead Plaintiff and Approval of Counsel (ECF No. 22) is DENIED AS MOOT in light of the Notice of Non-Opposition to Competing Motions for Appointment as Lead Plaintiff and Approval of Counsel (ECF No. 29);

7. Movant Matthew Shipley's Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel (ECF No. 20) is DENIED AS MOOT in light of the Notice of Non-Opposition to Competing Motions (ECF No. 27);

8. The stay order in this case (ECF No. 15) is LIFTED; and

9. The parties are DIRECTED to jointly contact the chambers of United States Magistrate Judge Michael E. Hegarty by no later than **August 14, 2023** to schedule a Status Conference, or such other proceeding as Judge Hegarty deems appropriate to move this litigation forward.

Dated this 9th day of August, 2023.

BY THE COURT:

_____
William J. Martínez
Senior United States District Judge