IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-02105-WJM-MEH

TAO WANG, individually and on behalf of all others similarly situated,
SYNWORLD TECHNOLOGIES CORPORATION, individually and on behalf of all others similarly situated,

       Plaintiff,

v.

AMPIO PHARMACEUTICALS, INC.
MICHAEL A. MARTINO,
MICHAEL MACALUSO,
HOLLI CHEREVKA,
DAN STOKELY,
DAVID BAR-OR,
PHILIP H. COELHO, and
RICHARD B. GILES

       Defendants.

**LEAD PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT; AND MEMORANDUM OF LAW IN SUPPORT**

Lead Plaintiffs Tao Wang and his wholly-owned company, SynWorld Technologies Corporation ("Plaintiffs"), on behalf of themselves and the putative Settlement Class,[1] respectfully move this Court for an Order pursuant to Rule 23(e) of the Federal Rules of Civil Procedure: (a) preliminarily approving the proposed Settlement of the above-captioned securities class action lawsuit (the "Action") reached between Plaintiffs and defendants Ampio

---

[1] Unless otherwise noted, the following conventions are used herein: (a) all emphases are added; (b) all citations and internal quotation marks are omitted; (c) all capitalized terms have the meaning ascribed to them in the Stipulation and Agreement of Settlement dated May 13, 2024 ("Stipulation" or "Stip."), filed concurrently herewith; (d) all references to "Rule(s)" refers to the Federal Rules of Civil Procedure; and (e) all references to Exhibits 1-2 are to the exhibits annexed to the Declaration of James M. Wilson, Jr. filed herewith.

1

Pharmaceuticals, Inc. ("Ampio" or the "Company"), Michael A. Martino, Holli Cherevka, Dan Stokely, David Bar-Or, Philip H. Coelho, and Richard B. Giles (with Ampio, the "Defendants"); (b) approving the form and manner of providing notice of the Settlement to the Settlement Class; (c) certifying the Settlement Class for settlement purposes; (d) appointing Plaintiffs as Class Representatives and Faruqi & Faruqi, LLP (the "Faruqi Firm" or "Lead Counsel") as Class Counsel for settlement purposes; and (e) setting a hearing date for final approval of the Settlement, the proposed Plan of Allocation, and Lead Counsel's motion for an award of attorneys' fees, reimbursement of litigation expenses, and an award for Plaintiffs.

## MEMORANDUM OF LAW

Plaintiffs, on behalf of themselves and the putative Class, and Defendants have reached a proposed classwide Settlement for $3,000,000 that, if approved, will resolve all claims in the Action. The Settlement was reached only after a thorough investigation by Lead Counsel, the filing of the Amended Class Action Complaint ("AC") (ECF No. 57), the exchange of detailed lengthy mediation statements with exhibits, a day-long mediation session with a well-respected mediator from JAMS, and confirmatory discovery that included the review of over 25,000 documents provided by Defendants and interviews of two Ampio representatives. The proposed Settlement was reached early in this case after Plaintiffs and their counsel discussed with defense counsel and investigated thoroughly the Company's dire financial straits. The financial concerns that led to the Settlement proved legitimate. Ampio is now in the process of winding down its affairs. It has been delisted and deregistered from the New York Stock Exchange American ("NYSE") and has filed a Form 15 with the Securities and Exchange Commission ("SEC") to suspend its reporting requirements. Despite the Company's precarious state of affairs at the time

of the mediation, Plaintiffs were able to obtain a recovery for Class Members that is fair, reasonable, and adequate. Indeed, the proposed Settlement represents a significant percentage of the damages alleged to have been suffered by class members and a significant percentage of the Company's remaining assets.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On October 16, 2023, Plaintiffs filed the AC, alleging that Defendants violated §10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") by materially misrepresenting and omitting material facts regarding, *inter alia*, the latest trial of Ampio's drug, Ampion®. *See generally* AC. Briefly, the AC alleges that Defendants knowingly and/or recklessly made the challenged statements while omitting that Ampio employees engaged in serious misconduct by prematurely viewing the drug trial results and distributing Ampion for a use that had not been approved by the FDA. *See, e.g., id.* at ¶2.

Shortly after the AC was filed, the Parties discussed Ampio's financial condition and prospects to continue its operations and thereafter agreed to mediate the Action. From Plaintiffs' perspective, based on their investigation, mediation was appropriate at this juncture considering Ampio's dire financial situation, which placed its future ability to fund a judgment or any settlement in substantial doubt. After exchanging mediation statements, the Parties participated in an all-day mediation session on January 4, 2024, conducted by Robert E. Meyer of JAMS, a well-respected and highly experienced mediator, to explore a potential negotiated resolution of the Action's claims. The mediation resulted in the Parties reaching an agreement-in-principle to settle and release the claims in the Action, subject to the completion of confirmatory discovery.

The proposed Settlement provides that Ampio will cause $3,000,000 to be paid, in cash,

3

to settle all claims in the Action. Following the mediation session, Defendants produced documents Plaintiffs requested as part of confirmatory discovery. After reviewing over 25,000 documents, Plaintiffs interviewed two Ampio representatives to discuss the Company's financial condition and prospects as well as the AC's allegation and the Defendants' defenses. The confirmatory discovery reviewed has confirmed to Plaintiffs and Lead Counsel that the Settlement is fair, reasonable and adequate.

## ARGUMENT

### I. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Rule 23(e) provides that any compromise of a class action must receive court approval. The settlement approval process involves two steps: "(1) preliminary approval of the settlement; and (2) final approval of the settlement at a fairness hearing following notice to the class." *In re Celera Corp. Sec. Litig.*, 2015 WL 1482303, at *3 (N.D. Cal. Mar. 31, 2015). Under the 2018 amendments to Rule 23, the issue at preliminary approval is whether the court "will ***likely*** be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23(e)(1)(B). Rule 23(e)(2) directs the Court to determine whether the Settlement is "fair, reasonable, and adequate" after considering whether: (A) the Class has been adequately represented; (B) the proposal was negotiated at arms' length; (C) the relief provided is adequate; and (D) the proposal treats Class members equitably.

Rule 23(e)(2)'s new factors do not displace the factors that the Tenth Circuit previously used to determine whether a settlement is "fair, reasonable, and adequate[,]" which are:

> (1) [W]hether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

4

(4) the judgment of the parties that the settlement is fair and reasonable.

*Chavez Rodriguez v. Hermes Landscaping, Inc.*, 2020 WL 3288059, at *2 (D. Kan. June 18, 2020). These factors "largely overlap" with Rule 23(e)(2)'s factors, "with only the fourth factor not being subsumed" into it. *Id.* "Accordingly, a court considers the Rule 23(e)(2) factors as the main tool in evaluating the propriety of the settlement but still addresses the Tenth Circuit's factors." *Or. Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.*, 2024 WL 98387, at *2 (D. Colo. Jan. 9, 2024) (Martínez, J.).

### A. The Class Has Been Adequately Represented

Determining adequacy requires "resolution of two questions ...: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *CO Craft, LLC v. Grubhub Inc.*, 2023 WL 3763525, at *8 (D. Colo. June 1, 2023). Here, Plaintiffs' interests are directly aligned with those of other Class members, as they claim to have suffered damages from the same alleged conduct, and through those claims seek the same recovery from Defendants. Additionally, Lead Counsel is a national law firm that is qualified, experienced, and able to conduct this litigation. *See* Ex. 1, Faruqi Firm resume. Lead Counsel's interests are also aligned with the Class, which is clear from its dedication of substantial resources to investigating and fighting to preserve the claims in this Action. *See Nakkhumpun v. Taylor*, 2015 WL 6689399, at *5 (D. Colo. Nov. 3, 2015) (finding "plaintiff and his counsel will fairly and adequately protect the [class's] interests" where plaintiff is a class member, "suffered the same injuries as proposed class members," and "plaintiff and his counsel have the same interests and objectives as class members").

5

### B. The Settlement Was Negotiated At Arm's Length

Rule 23(e)(2)(B) requires the Court consider whether the proposed Settlement "was negotiated at arm's length[,]" which "subsume[s]" this Circuit's "fair and honest negotiation requirement[.]" *Chavez Rodriguez*, 2020 WL 3288059, at *3.

Here, the Parties engaged in a mediation session after, *inter alia*, Lead Counsel conducted a lengthy investigation into the facts alleged in the Action, including reviewing and analyzing documents filed publicly with the SEC and press releases, news articles, and public statements issued by or concerning Ampio, and drafted the AC. After exchanging mediation statements, the Parties had a mediation session with Robert Meyer, a well-respected mediator with significant experience mediating securities fraud class actions. *See Voulgaris v. Array Biopharma Inc.*, 2021 WL 6331178, at *5 (D. Colo. Dec. 3, 2021), ("[U]tilization of an experienced mediator supports a finding that the settlement is reasonable, was reached without collusion and should therefore be approved."). The Parties vigorously debated their positions during the mediation and arrived at a settlement-in-principle, subject to the production of confirmatory discovery. After reviewing thousands of documents, Lead Counsel interviewed two Ampio representatives, one of whom answered questions regarding the Company's finances and the other of whom answered questions regarding the allegations in the AC and the likely defenses. Through the confirmatory discovery process, Plaintiffs have confirmed that the proposed Settlement is fair, reasonable, and adequate.

### C. The Relief Provided For The Class Is Adequate

Rule 23(e)(2)(C) requires the Court to determine whether the relief provided for the Class is adequate, taking the following four considerations into account. Rule 23(e)(2)(C)(1)-(4).

        **1.**        **The Costs, Risks, and Delay of Trial and Appeal**

This Rule 23 factor overlaps with and "subsume[s]" the second and third Tenth Circuit factors—(2) "whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;" and (3) "whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation." *Chavez Rodriguez*, 2020 WL 3288059, at *3. These considerations weigh in favor of the Settlement.

While Plaintiffs believe that the claims asserted in the Action are meritorious and that the information developed supports those claims, they acknowledge that continuing the Action poses significant risks and additional costs. Indeed, securities class actions in particular are highly complex and present numerous hurdles to proving liability and damages. *See In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999). This case is no exception.

During the mediation, Defendants raised numerous challenges to Plaintiffs' ability to establish all of the elements of their §10(b) claims and adamantly deny any wrongdoing. *See* Stip. 5. For example, without this Settlement, this Action would have been vigorously contested, beginning with the filing of several motions to dismiss. Plaintiffs anticipate that Defendants would argue, *inter alia*, that any alleged misstatements were immaterial, lacked falsity, and that the AC failed to plead that any of the Defendants acted with a strong inference of scienter.

Even if the Action survived any motions to dismiss filed, however, the fact and expert discovery process would likely be time-consuming and expensive. For example, the AC alleges, *inter alia*, that certain defendants had access to information about the Ampion trial data and distributed the drug to third-parties without proper authorization, in violation of FDA rules and regulations. *See, e.g.,* AC ¶¶6-7. The AC also alleges that the SEC launched an investigation

7

into Ampio's conduct. *Id.* at ¶17. Thus, the discovery process would require, among other things, document subpoenas to any third-party drug recipients, former Ampio employees, clinical trial vendors and facilities, many of which may be subject to HIPPA limitations; the retention of expert witnesses regarding technical issues about the relevant FDA rules and regulations; discovery motion practice; production and review of thousands of pages of documents; and taking numerous depositions. Defendants would undoubtedly aggressively litigate this Action at each step, including disputing class certification, material misstatements, scienter, loss causation and damages. Obtaining the necessary discovery is further complicated here by the passing of defendant Michael Macaluso, as Plaintiffs will not be able to obtain from him any interrogatory responses or deposition testimony. *See* ECF No. 53. Thus, even after the considerable time and expense of discovery, Plaintiffs' claims could be dismissed at summary judgment.

Even if Plaintiffs' claims survived summary judgment, trial would be very time consuming, expensive, and would monopolize valuable court resources. Plaintiffs could lose at trial, leaving the Class with no recovery at all, and even if Plaintiffs prevailed, Defendants might appeal, further prolonging the litigation. Under these circumstances, the Class "is better off receiving compensation now as opposed to being compensated, if at all, several years down the line, after the matter is certified, tried, and all appeals are exhausted." *McNeely v. Nat'l Mobile Health Care, LLC*, 2008 WL 4816510, at *13 (W.D. Okla. Oct. 27, 2008).

This is particularly so in light of Ampio's precarious financial position. It is Lead Counsel's and Plaintiffs' understanding that the Company's ability to fund a settlement in this Action is limited, and that continued litigation would further erode the assets available to fund a later judgment or settlement. Prior to the mediation, Ampio disclosed that there is "substantial

8

doubt about the Company's ability to continue as a going concern." Quarterly Report 9 (Form 10-Q) (Nov. 14, 2023). Time did not improve matters, and Ampio is currently in the process of winding down the Company's operations as its most recent drug trial failed. *See* Annual Report 5 (Form 10-K) (Mar. 27, 2024) ("2023 10-K"). Indeed, as of December 31, 2023, Ampio's source of liquidity was only $4.1 million of cash and cash equivalents and $0.9 million of an insurance recovery receivable, which decreased to $3.4 million and $0.5 million, respectively, as of February 29, 2024. *Id.* at 8. One of the representatives interviewed confirmed that Ampio is "winding down" operations to the "bare bones" to preserve cash with no plans to seek further sources of capital. The Company has voluntarily delisted from the NYSE American. *Id.* at 5; Press Release (Form 8-K) (Mar. 25, 2024). Ampio is also facing two consolidated federal derivative actions, a state court derivative case, and an SEC investigation, which are reducing the insurance available to fund any settlement of this Action. *See* 2023 10-K at 8-9.

Thus, the Settlement Amount of $3 million is well within the range of reasonableness under the circumstances. The Settlement Amount represents approximately 14% of the Class's estimated maximum damages. This is substantially higher than the median ratio of settlement to investor losses for recent securities class action settlements, which NERA determined was 1.8% for 2023, and the median settlement value for settlements where investor losses were between $20-49 million, which NERA determined was 5.1%  Ex. 2 at 25-26. This percentage is also within the range of typical recoveries in complex securities litigation. *See, e.g., In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 691 n.20 (D. Colo. 2014) (approving settlement representing a recovery of 1.3% of estimated damages and noting that it is "in line with [NERA's] median ratio of settlement size to investor losses"); *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *11

9

(N.D. Cal. Oct. 27, 2015) (citing 5.5-6.2% as the average range of recoveries and noting that 14% of estimated damages "exceeds the typical recovery").

### 2. The Proposed Method for Distributing Relief is Effective

Rule 23(e)(2)(C)(ii) requires the court to consider whether the proposed method of distributing relief to the class is effective, including the processing of class members' claims. The Settlement provides a well-established method for distributing relief to eligible Class members and processing claims. As explained in Section III, *infra*, the notice plan includes mailing the Postcard Notice to all Class members who can be identified with reasonable efforts (Stip. Ex. A-2), along with publication notice (Stip. Ex. A-4). The Postcard Notice will direct Settlement Class members to the Settlement website which will provide them with the opportunity to review the long-form Notice (Stip. Ex. A-1) and download, fill out, and return the Claim Form (Stip. Ex. A-3) to the Claims Administrator.

Under the proposed Plan of Allocation, Class members who are entitled to a distribution of at least $10 will receive a *pro rata* share of the recovery based upon their claimed losses consistent with the Action's allegations. *See* Stip. Ex. A-1 at 20. Plaintiffs respectfully submit that this method of distribution and claims processing is effective. *See Becker v. Bank of N.Y. Mellon Tr. Co., N.A.*, 2018 WL 6727820, at *7 (E.D. Pa. Dec. 21, 2018) (finding that the "methods of distributing relief to the class and of processing class-member claims are fair[]" where class members were required to submit a proof of claim listing their relevant holdings and provide documentation to substantiate their holdings).

### 3. Terms of Attorneys' Fees and Timing of Payment

Rule 23(e)(2)(C)(iii) requires the Court to consider "the terms of any proposed award of

10

attorney's fees, including timing of payment[.]"  Lead Counsel will seek an award of attorneys' fees of 28% of the Settlement Amount, plus expenses.  *See* Stip. Ex. A-1 at 1, 4, Ex. A-2.  Lead Counsel's fee request is well within the range that has been approved in complex class actions, and the timing of payment (promptly after an award is entered, Stip. ¶18), is standard.  *See Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita, Inc.*, 2021 WL 2981970, at *3-4 (D. Colo. July 15, 2021) (Martinez, J.) (awarding 30% of $135 million settlement plus expenses and noting that in this Circuit, "the typical fee award in complex cases is around one third of the common fund"); *In re China MediaExpress Holdings, Inc. S'holder Litig.*, 2015 WL 13639423, at *2 (S.D.N.Y. Sept. 18, 2015) (awarding fees to be paid shortly after entry of judgment).

    **4.**  **Related Agreements**

Rule 23(e)(2)(C)(iv) requires the Court to determine the proposed Settlement's adequacy in light of any agreements made in connection with it.  The only such agreement is the Confidential Supplemental Agreement, which sets forth certain conditions under which Defendants can terminate the Settlement should requests for exclusion from the Settlement Class exceed certain agreed-upon criteria.   Stip. ¶36.  This type of agreement is common in class actions and does not render a settlement unfair.  *See Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *7 (N.D. Cal. Dec. 18, 2018).

  **D.**  **The Settlement Treats Class Members Equitably**

Rule 23(e)(2)(d) requires the Court to consider whether "the proposal treats class members equitably relative to each other."  Under the proposed Plan of Allocation, Class Members will be required to sign the same release and will receive a *pro rata* share of the recovery based upon their Recognized Losses consistent with the Action's allegations.  *See* Stip.

Ex. A-1 at 16-20; *Voulgaris*, 2021 WL 6331178, at *7 (finding similar proposal to be equitable).

While Plaintiffs will receive a distribution from the Net Settlement Fund in accordance with the Plan of Allocation, they may also seek an award of up to $5,000 for their reasonable costs and expenses (including lost wages) directly relating to their representation of the Class, as authorized by the PSLRA.  15 U.S.C. §78u-4(a)(4); *see Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *10 (N.D. Cal. Sept. 4, 2018) ("service awards . . . do not necessarily render a settlement unfair or unreasonable").

### E. The Settlement Satisfies the Remaining Tenth Circuit Factor

The final factor courts consider in the Tenth Circuit is if "the judgment of the parties that the settlement is fair and reasonable."  *Chavez Rodriguez*, 2020 WL 3288059, at *2.  In analyzing this factor, courts recognized that "the recommendation of a settlement by experienced plaintiffs' counsel is entitled to great weight."  *O'Dowd v. Anthem, Inc.*, 2019 WL 4279123, at *14 (D. Colo. Sept. 9, 2019).  Lead Counsel, which has extensive experience litigating securities class actions and has thoroughly analyzed the facts and law relevant to this Action, believes that the Settlement is in the best interests of the Class.

## II. THE COURT WILL LIKELY BE ABLE TO CERTIFY THE CLASS

Rule 23(e)(1)(B)(ii) requires the Court to consider whether it "will likely be able to certify the class for purposes of judgment on the proposal."  Plaintiffs seeks certification of the following Class for the purposes of Settlement only: "all persons or entities who purchased or otherwise acquired Ampio common stock during the Class Period and were damaged thereby."[2]

---

[2]   Excluded from the Settlement Class are (i) Defendants; (ii) members of the Immediate Family of any Individual Defendant; (iii) all subsidiaries and affiliates of Ampio and the current

Stip. ¶1.uu. To certify a class for settlement purposes, a court must find that the proposed class satisfies the four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy—as well as at least one subsection of Rule 23(b).

### A. The Settlement Class Is Sufficiently Numerous

Rule 23(a)(1) provides that a class may be certified if it is "so numerous that joinder of all members is impractical[.]" Rule 23(a)(1). "In cases involving securities traded on national stock exchanges, numerosity is practically a given." *In re Verisign, Inc. Sec. Litig.*, 2005 WL 7877645, at *4 (N.D. Cal. Jan. 13, 2005). Ampio shares traded on the NYSE American during the Class Period, with between 195 million to 226 million approximate shares outstanding during the Class Period, potentially owned by hundreds or thousands of Class Members. *See* Annual Report 1 (Form 10-K) (Mar. 3, 2021); Quarterly Report 1 (Form 10-Q) (Aug. 9, 2022). Thus, joinder would be impractical and the numerosity requirement is satisfied.

### B. There Are Common Questions Of Law And Fact

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class[.]" Here, the overarching issue shared by all members of the proposed Class is whether Defendants violated the Exchange Act. *See* AC ¶199. Courts in this District have found that similar questions of law and fact meet the commonality requirements. *See, e.g., In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, 318 F.R.D. 435, 444 (D. Colo. 2015).

---

and former directors and officers of Ampio or any of its subsidiaries or affiliates; (iv) any firm, trust, partnership, corporation, or entity in which any Defendant has a controlling interest; (v) the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of all such excluded parties; and (vi) any persons or entities who properly exclude themselves by filing a valid and timely request for exclusion. Stip. ¶1.uu.

### C. The Proposed Class Representatives' Claims Are Typical

Rule 23(a)(3)'s "typicality requirement is satisfied if the claims of the named plaintiff and class members are based on the same legal or remedial theory." *Oppenheimer*, 318 F.R.D. at 444. Here, Plaintiffs' claims are typical of the Class's claims because they all allege that they purchased or acquired Ampio's common stock at artificially inflated prices due to Defendants' material misstatements and omissions. AC ¶197. By proving their claims, Plaintiffs would prove the Class's claims. *Id.*

### D. The Proposed Class Representative Is Adequate

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Plaintiffs have established their adequacy for the reasons in §I.A.

### E. The Predominance and Superiority Requirements Are Satisfied

A class may be certified under Rule 23(b)(3) if the Court finds that (1) the questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The predominance prong is satisfied because, as described above, the questions of law or fact common to the Settlement Class predominate over any individual questions. *See* §II.B. The superiority prong is also satisfied because settlement as a Class action "is a superior method for resolving this dispute fairly and effectively" as it "avoids duplicative litigation, saving both plaintiffs and defendants significant time and legal costs to adjudicate common legal and factual issues" and "because individual recovery for these claims is likely too small to provide an incentive for individual class members to adjudicate individual claims." *In re Crocs, Inc. Sec. Litig.*, 2013 WL 4547404, at *10 (D. Colo. Aug. 28, 2013).

### III. THE PROPOSED CLASS NOTICE PROGRAM SHOULD BE APPROVED

The proposed class notice must meet the requirements of Rule 23, the Due Process Clause, and the PSLRA. *See Maxar*, 2024 WL 98387, at *5. The court "must direct to class members the best notice that is practicable under the circumstances[.]" Rule 23(c)(2)(B). Such notice must be directed "in a reasonable manner" to potential Class members who would be bound by the proposed Settlement. Rule 23(e)(1)(B). The Due Process Clause imposes similar requirements. *Tennille v. W. Union Co.*, 785 F.3d 422, 436-37 (10th Cir. 2015).

The proposed notice program fulfills the requirements of due process, Rule 23, and the PSLRA. Plaintiffs, through the Claims Administrator, propose to give potential Class members and nominees notice by mail and by publication in *Investor's Business Daily* and *PR Newswire*. The Claims Administrator will also post the Notice on the dedicated case website: www.AmpioSecuritiesSettlement.com. The proposed form of Notice describes, in "plain, easily understood language," the information required by Rule 23(c)(2)(B) and the PSLRA, 15 U.S.C. §78u-4(a)(7)(A)-(F). *See* Stip. Ex. A-1. Plaintiffs respectfully submit that the proposed method of giving notice provides Class members with the best notice practicable under the circumstances. *Tech Instrumentation Inc. v. Eurton Elec. Co. Inc.*, 2019 WL 4386401, at *1 (D. Colo. Sept. 13, 2019) (finding "a summary postcard and full notice posted on a website" were an "adequate means to notify and inform members of the class").

### CONCLUSION

Plaintiffs respectfully request the Court grant their motion in its entirety.

Dated:  May 13, 2024                    Respectfully submitted,

                                        By: s/ James M. Wilson, Jr.
                                        James M. Wilson, Jr.

15

**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email:   jwilson@faruqilaw.com

Robert W. Killorin
**FARUQI & FARUQI, LLP**
3565 Piedmont Road NE Building Four
Suite 380
Atlanta, GA 30305
Telephone: 404-847-0617
Facsimile: 404-506-9534
Email:  rkillorin@faruqilaw.com

*Attorneys for Lead Plaintiffs Tao Wang and SynWorld Technologies Corporation and Lead Counsel for the putative Class*

16

## CERTIFICATE OF SERVICE

I, James M. Wilson, Jr., hereby certify that on May 13, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the Court's Electronic Mail Notice List.

*s/ James M. Wilson, Jr.*
James M. Wilson, Jr.

## CERTIFICATE OF CONFERRAL

Pursuant to D.C.COLO.LCivR 7.1(a), prior to filing the foregoing Motion, Plaintiffs' counsel emailed it to Defendants' counsel and Defendants' counsel responded via email confirming that Defendants do not oppose it.

*s/ James M. Wilson, Jr.*
James M. Wilson, Jr.

32026529_v1

1