IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-02105-WJM-MEH

TAO WANG, individually and on behalf of all others similarly situated,
SYNWORLD TECHNOLOGIES CORPORATION, individually and on behalf of all others
similarly situated,

        Plaintiff,

v.

AMPIO PHARMACEUTICALS, INC.
MICHAEL A. MARTINO,
MICHAEL MACALUSO,
HOLLI CHEREVKA,
DAN STOKELY,
DAVID BAR-OR,
PHILIP H. COELHO, and
RICHARD B. GILES

        Defendants.

---

**LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE CLASS ACTION
SETTLEMENT; AND MEMORANDUM OF LAW IN SUPPORT**

---

Lead Plaintiffs Tao Wang and his wholly-owned company, SynWorld Technologies

Corporation ("SynWorld" and collectively with Mr. Wang ("Plaintiffs")), on behalf of

themselves and the putative Settlement Class,[1] respectfully move this Court for an Order

pursuant to Rule 23(e) of the Federal Rules of Civil Procedure: (a) granting final approval of the

proposed Settlement of the above-captioned securities class action lawsuit (the "Action") on the

terms set forth in the Stipulation; (b) finding that the form and manner of giving notice of the

---

[1]     Unless otherwise noted, the following conventions are used herein: (a) all emphases are
added; (b) all citations and internal quotation marks are omitted; (c) all capitalized terms have
the meaning ascribed to them in the Stipulation and Agreement of Settlement dated May 13,
2024 ("Stipulation" or "Stip."), ECF No. 93; and (d) all references to "Rule(s)" refers to the
Federal Rules of Civil Procedure.

Settlement to the Class satisfied due process, Rule 23, and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4, *et seq.* (the "PSLRA"); and (c) granting final approval of the proposed Plan of Allocation.

## MEMORANDUM OF LAW

As discussed in Lead Plaintiffs' Unopposed Motion for Preliminary Approval of the Class Action Settlement ("Preliminary Approval Motion" or "PA Motion"), ECF No. 94, Plaintiffs, on behalf of themselves and the putative Class, and Defendants Ampio Pharmaceuticals, Inc. ("Ampio" or the "Company"), Michael A. Martino, Holli Cherevka, Dan Stokely, David Bar-Or, Philip H. Coelho, and Richard B. Giles (with Ampio, the "Defendants"), have reached a proposed class wide Settlement for $3,000,000 that, if given final approval, will resolve all claims in the Action. The Settlement represents a favorable result for the Class in light of the significant risks at the time of mediation of low or no recovery due to the Company's deteriorating financial condition. Plaintiffs acted fast to secure a substantial portion of remaining insurance coverage before it was expended in legal fees and before the Company filed for dissolution. The Plan of Dissolution for Ampio was approved by stockholders at a special meeting on August 15, 2024 and Ampio was dissolved on August 16, 2024.

As discussed below and in the Declaration of James M. Wilson, Jr. in Support of Lead Plaintiffs' Motion for Final Approval of the Class Action Settlement and Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and an Award to Lead Plaintiffs (the "Wilson Declaration"), the Settlement was reached only after a thorough investigation by Lead Counsel; the filing of the Amended Class Action Complaint ("AC") (ECF No. 57); a day-long mediation session with a well-respected mediator from JAMS preceded by submission of

comprehensive mediation statements; and confirmatory discovery that included the review of over 25,000 documents provided by Defendants and interviews of two Ampio representatives.

The Class's reaction to the Settlement and Plan of Allocation has been positive to date. Pursuant to the Order preliminarily approving the Settlement ("Preliminary Approval Order" or "PA Order"), ECF No. 97, the Court-approved Claims Administrator, Simpluris, has, *inter alia*, mailed 21,714 copies of the Postcard Notice to potential Class Members and nominees, posted the requisite documents to the Action's Settlement website, and caused the Summary Notice to be published in *Investor's Business Daily* and transmitted over *PR Newswire*. Wilson Decl. ¶¶44-46. Although the deadline for Class Members to object to the Settlement or request exclusion has not yet passed, thus far no requests for exclusion or objection have been received. *Id.* ¶¶48-49.

In light of the considerations disclosed herein, Plaintiffs and Lead Counsel submit that the Settlement is fair, reasonable, and adequate; satisfies the standards of Rule 23, the PSLRA, and due process; and provides a favorable recovery for the Settlement Class. Plaintiffs accordingly request that the Court grant the relief requested herein.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

To avoid undue repetition, Plaintiffs respectfully refer the Court to their Preliminary Approval Motion and the Wilson Declaration (¶¶11-22) for a more detailed description of Plaintiffs' claims and the prosecution of this Action.

Briefly, on October 16, 2023, Plaintiffs filed the AC, alleging that Defendants violated §10(b) and §20(a) of the Exchange Act by making false and/or misleading statements while omitting that Ampio employees engaged in serious misconduct by prematurely viewing the drug

trial results and distributing Ampion for a use that had not been approved by the FDA.  *See, e.g.,*
AC ¶2.

      In the typical PSLRA case, the next step in the litigation would have been for Defendants
to file a motion to dismiss.  In light of Ampio's dire financial condition, however, the Parties
agreed to mediate the Action.  An all-day mediation session on January 4, 2024, conducted by
Robert E. Meyer of JAMS, a well-respected and highly experienced mediator, resulted in an
agreement-in-principle, subject to robust confirmatory discovery.  Wilson Decl. ¶25.  Over the
ensuing months, Lead Counsel conducted confirmatory discovery to confirm that the proposed
$3,000,000 Settlement was fair, reasonable, and adequate.  *Id.* ¶¶26-29.  The Parties thereafter
finalized the Settlement papers, and Plaintiffs filed the Stipulation and Preliminary Approval
Motion with the Court on May 13, 2024.  *Id.* ¶41.

      On September 24, 2024, the Court entered the Preliminary Approval Order, which, *inter
alia*, approved the form and manner of providing notice to the Class, preliminarily certified the
Class for settlement purposes, and set a hearing date for the Settlement Hearing as well as
deadlines for the briefing related thereto.  *Id.* ¶ 42.  The details of the notice program's progress
to date is explained in further detail in §III, *infra*.

**ARGUMENT**

**I.     THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL**

      Rule 23(e) provides that a class action settlement must receive court approval.  Rule
23(e)(2) provides that a court may grant final approval of a settlement only after a hearing and
only on finding that it is fair, reasonable, and adequate after considering the factors set forth
therein.  *See* PA Mot. 4-5.  The Rule 23(e)(2) factors do not displace the factors that the Tenth

4

Circuit used before that Rule was amended to determine whether final approval is appropriate, several of which overlap with Rule 23(e)(2)'s factors. *See id.*

As explained in the Preliminary Approval Motion, all of the requirements imposed by Rule 23(e)(2) and the relevant Tenth Circuit factors have been met. Courts that have analyzed proposed settlements following the amendments to Rule 23 have found that the factors are usually satisfied where little has changed between preliminary and final approval, as is the case here. *See In re Chrysler-Dodge-Jeep Ecodiesel® Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2554232, at *1-2 (N.D. Cal. May 3, 2019) (finding that the conclusions the court made in granting preliminary approval "stand and counsel equally in favor of final approval now"); *In re GSE Bonds Antitrust Litig.*, 2020 WL 3250593, at *1 (S.D.N.Y. June 16, 2020) (stating that the Court's previous orders granting preliminary approval of the settlements at issue already detailed why the relevant factors support approval, readopting that analysis at the final approval stage, and focusing only on "those few developments since" preliminary approval that impact the analysis). Nevertheless, the factors are briefly analyzed below.

### A.    The Class Has Been Adequately Represented

Rule 23(e)(2) is satisfied because Plaintiffs and their counsel have adequately represented the Class throughout the litigation and will continue to do so through the settlement administration process. Plaintiffs' interests are directly aligned with those of other Class Members, as they claim to have suffered damages from the same alleged conduct, and through those claims seek the same recovery from Defendants. *See* PA Mot. 5 (explaining Plaintiffs' adequacy). Additionally, Mr. Wang has overseen the litigation every step of the way, having, among other things, reviewed filings in this Action, communicated with counsel about all aspects

of the case, and authorized the proposed Settlement.  *See* Wilson Decl., Ex. 4 (Mr. Wang's declaration).  Furthermore, Plaintiffs' counsel has zealously represented the Class at all times. *See generally* Wilson Decl.; *see also* PA Mot. 5 (explaining counsel's adequacy).

**B.    The Settlement Was Negotiated At Arm's Length**

Rule 23(e)(2)(B) is satisfied because the proposed Settlement was the result of arm's length negotiations between Lead Counsel and Defendants' counsel.

As described in the Preliminary Approval Motion and the Wilson Declaration, the Settlement is the product of extensive arm's length negotiations among counsel with significant experience in securities class action litigation, and was reached following mediation with an experienced mediator.  *See* Wilson Decl. ¶¶23-29, 62-63.  Lead Counsel thoroughly investigated the facts and law and drafted the AC.  *Id.* ¶64.  Thereafter, the Parties exchanged mediation statements and had a mediation session with Robert E. Meyer, a well-respected mediator with significant experience mediating securities fraud class actions.  *Id.* ¶¶23-29, 64.  After vigorously debating their positions during the all-day mediation and arriving at a settlement-in-principle, Lead Counsel reviewed thousands of documents in confirmatory discovery and interviewed two Ampio representatives regarding the Company's finances and the allegations in the AC and the likely defenses.  ¶¶26-27.  Thereafter, the Parties came to a final agreement regarding the full terms of the Settlement.  ¶29.

**C.    The Relief Provided For The Class Is Adequate**

**1.    The Costs, Risks, and Delay of Trial and Appeal**

Rule 23(e)(2)(C)(i) requires the Court to consider whether the Settlement Amount is adequate when taking into account the costs, risks, and delay of trial and appeal.  This inquiry

overlaps with and "subsume[s]" the second and third Tenth Circuit factors — (2) "whether

serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;"

and (3) "whether the value of an immediate recovery outweighs the mere possibility of future

relief after protracted and expensive litigation." *Chavez Rodriguez v. Hermes Landscaping, Inc.*,

2020 WL 3288059, at *3 (D. Kan. June 18, 2020). These considerations weigh in favor of the

Settlement.

As explained in the Preliminary Approval Motion, the $3,000,000 Settlement provides an

immediate benefit to the Class and is adequate when compared to the significant risk that no

recovery, or lesser recovery, might be achieved after protracted litigation, particularly in light of

Ampio's financial condition. PA Mot. 7-10. While Plaintiffs believe that the claims asserted in

the Action are meritorious and would be proven through fact discovery, continuing the Ampio

litigation would have been unwise because the remaining insurance policies were being

exhausted at a rapid pace and the chance for insolvency of the Company loomed large. Ampio

had no operating revenue and was dependent on equity raises to fund its operations. AC ¶136.

At the beginning of the Class Period, there was "substantial doubt about the Company's ability to

continue as a going concern," as it only had cash and cash equivalents of $17.3 million, a net loss

of $15.9 million, operating expenses of $15.8 million, and an accumulated deficit of $200.5

million. AC ¶137. These numbers only got worse in 2021. Indeed, soon after this Settlement

was achieved, Ampio filed for dissolution, which was approved by the Board on August 15,

2024 and the company was dissolved on August 16, 2024. *See* Wilson Decl., Ex. 5 (Ampio's

Certificate of Dissolution).

The risks of further litigation were discussed by counsel after the filing of the AC. *See*

PA Mot. 8-9; Wilson Decl. ¶¶23, 27-28, 36.  After agreeing to the Settlement, Ampio disclosed in its annual report filed with the SEC on March 27, 2024 that the "Board of Directors believes that more likely options include the liquidation and wind up of the Company through a dissolution pursuant to a plan of liquidation and dissolution . . . ."[2]

Additionally, securities class actions are highly complex and present numerous hurdles to proving liability and damages.  *See In re Sumitomo Copper Litig*., 189 F.R.D. 274, 281 (S.D.N.Y. 1999).  This case is no exception.

During the mediation, Defendants raised numerous challenges to Plaintiffs' ability to establish all of the elements of their §10(b) claims and adamantly denied any wrongdoing.  *See* Stip. 5 ¶J.  Defendants would undoubtedly continue to vigorously contest this Action were the litigation to go forward.  Even after putting in the considerable time and incurring the additional expenses that fact discovery would require, there is a chance that Plaintiffs' claims could be dismissed at the motion to dismiss stage, summary judgment, or at trial.  Wilson Decl. ¶¶30-36.

In light of the foregoing, the Settlement Amount of $3 million is well within the range of reasonableness.  As explained in the Preliminary Approval Motion, the Settlement Amount represents approximately 14% of the Class's estimated maximum damages, which is substantially higher than the median ratio of settlement to investor losses for recent securities class action settlements, which NERA determined was 1.8% for 2023, and the median settlement value for settlements where investor losses were between $20-49 million, which NERA determined was 5.1%  PA Mot. 9-10; Wilson Decl. ¶61.  This percentage is also within the

---

[2]  *See* Ampio, Annual Report at 5 (Form 10-K) (Mar. 27, 2024),
www.sec.gov/Archives/edgar/data/1411906/000155837024004090/ampe-20231231x10k.htm.

range of typical recoveries in complex securities litigation.  *See id*.

## 2.    The Proposed Method for Distributing Relief is Effective

Rule 23(e)(2)(C)(ii) requires the court to consider whether the proposed method of

distributing relief to the class is effective, including the processing of class members' claims.

The Settlement provides a well-established method for distributing relief to eligible Class

Members and processing claims.  PA Mot. 10.

Additionally, the Settlement's claim process is similar to the process commonly used in

securities class action settlements.  *See id.*  The claims process provides for cash payments to

eligible Class Members based on their pro rata share of the recovery as established by the trading

information eligible Class Members provide.  *Id*.  This factor supports final approval for the

same reason that it supported preliminary approval.  *See Becker v. Bank of N.Y. Mellon Tr. Co.,

N.A*., 2018 WL 6727820, at *7 (E.D. Pa. Dec. 21, 2018) (finding that the "methods of

distributing relief to the class and of processing class-member claims are fair[]" where class

members were required to submit a proof of claim listing their relevant holdings and provide

documentation to substantiate their holdings).

## 3.    Terms of Attorneys' Fees and Timing of Payment

Rule 23(e)(2)(C)(iii) requires the Court to consider "the terms of any proposed award of

attorney's fees, including timing of payment[.]"  Consistent with the notices, and as discussed in

the Fee Motion, Lead Counsel seeks an award of attorneys' fees of 28% of the Settlement Fund,

plus expenses.  *See* Wilson Decl. ¶¶58-59.  This amount is supported by Lead Counsel's lodestar,

which is $756,157.50, based on 1,152.30 hours of attorney and professional staff time and results

in a modest 1.11 multiplier.  *See* Wilson Decl. ¶¶64-65.  Lead Counsel's fee request is well

within the range that has been approved in complex class actions, and the timing of payment

(promptly after an award is entered, Stip. ¶18), is standard. *See Peace Officers' Annuity &*

*Benefit Fund of Ga. v. DaVita Inc.*, 2021 WL 2981970, at *3-4 (D. Colo. July 15, 2021)

(Martínez, J.) (awarding 30% of $135 million settlement plus expenses and noting that in this

Circuit, "the typical fee award in complex cases is around one third of the common fund"); *In re*

*China MediaExpress Holdings, Inc. S'holder Litig.*, 2015 WL 13639423, at *2 (S.D.N.Y. Sept.

18, 2015) (awarding fees to be paid shortly after entry of judgment).

### 4.    Related Agreements

Rule 23(e)(2)(C)(iv) requires the Court to determine the proposed Settlement's adequacy

in light of any agreements made in connection with it.  As disclosed in the Preliminary Approval

Motion, the only such agreement is the Confidential Supplemental Agreement, which sets forth

certain conditions under which Defendants can terminate the Settlement should requests for

exclusion from the Settlement Class exceed certain agreed-upon criteria.  *See* PA Motion 11.

### D.    The Settlement Treats Class Members Equitably

Rule 23(e)(2)(d) requires the Court to consider whether "the proposal treats class

members equitably relative to each other."  The Plan of Allocation does just that, calculating

each Authorized Claimant's losses based on the timing of their purchases and sales of Ampio

stock and providing that each Authorized Claimant who would receive at least $10 from their pro

rata share of the Net Settlement Fund will receive payment. *See* Wilson Decl. ¶¶51-56; *In re*

*Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 692-93 (D. Colo. 2014) (finding $10 de minimis payment

threshold reasonable "in order to preserve the settlement fund from excessive and unnecessary

expenses").

10

Plaintiffs' request for an award of $5,000 pursuant to 15 U.S.C. §78u-4(a)(4) is reasonable, as explained in the accompanying Fee Motion, and does not change this conclusion. *See* Fee Mot. at 12-14.

### E.    The Settlement Satisfies the Remaining Tenth Circuit Factor

The final factor courts consider in the Tenth Circuit is "the judgment of the parties that the settlement is fair and reasonable." *Chavez Rodriguez*, 2020 WL 3288059, at *2. In analyzing this factor, courts recognized that "the recommendation of a settlement by experienced plaintiffs' counsel is entitled to great weight." *O'Dowd v. Anthem, Inc.*, 2019 WL 4279123, at *14 (D. Colo. Sept. 9, 2019). Lead Counsel, which has extensive experience litigating securities class actions and has thoroughly analyzed the facts and law relevant to this Action, believes that the Settlement is in the best interests of the Class. Wilson Decl. ¶¶40, 62.

Additionally, the Class's reaction to date has been overwhelmingly positive. Pursuant to the Preliminary Approval Order, beginning on October 15, 2024, 21,714 copies of the Postcard Notice were mailed to potential Class Members and nominees, and the full-length Notice and Claim Form were made available on the Action's website. Declaration of Anne-Marie Marra of Simpluris Regarding Notice and Settlement Administration ("Marra Decl.") ¶¶8-14, 17. On October 28, 2024, the Summary Notice was published in *Investor's Business Daily* and transmitted over *PR Newswire*. *Id.* ¶¶15-16. Class Members who want to object to the Settlement or request exclusion from the Class are required to do so by January 29, 2025. *See* PA Order ¶¶17-19. Although the time for objections and exclusions has not yet expired, no requests for exclusion or objections to the Settlement have been received. *See* Wilson Decl. ¶¶48-49. Thus, the Class's reaction so far confirms the Settlement's adequacy. *See Or.*

11

*Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.*, 2024 WL 98387, at \*5 (D. Colo. Jan. 9,

2024) (Martinez, J.) (giving "great weight" to the lack of objections and the fact that only three

exclusion requests were received in determining the fairness and reasonableness of the

settlement).

## II.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE

The Court has broad discretion in approving a plan of allocation.  "Approval of a

plan of allocation of settlement proceeds in a class action under FRCP 23 is governed by

the same standards of review applicable to approval of the settlement as a whole: the plan

must be fair, reasonable, and adequate."  *In re Am. Apparel, Inc. S'holder Litig.*,

2014 WL 10212865, at \*18 (C.D. Cal. July 28, 2014).  "[A] plan of allocation that reimburses

class members based on the type and extent of their injuries is reasonable" and should be

approved.  *O'Dowd*, 2019 WL 4279123, at \*15.  That is the case here.

In developing the Plan of Allocation, Plaintiffs enlisted the help of a damages

consultant who is familiar with the damages issues in this Action, as well as the help of the

Claims Administrator which has experience implementing plans of allocation in

securities class actions.  *See* Wilson Decl. ¶55.  The Plan of Allocation's objective is to

distribute a pro rata share of the Net Settlement Fund to Authorized Claimants based

upon their claimed losses consistent with the AC's allegations.  *See id*. ¶53.  Specifically,

after Authorized Claimants submit their Claim Forms and supporting documentation, the

Claims Administrator will calculate their Recognized Loss according to a formula that

will take into account when and at what price they purchased Ampio common stock.  *See id*. ¶

54.

Thus, "the plan allocates the settlement fund proportional to the actual injury of each class member.  Accordingly, the plan of allocation is fair, reasonable and adequate." *Patel v. Axesstel, Inc.*, 2015 WL 6458073, at *7 (S.D. Cal. Oct. 23, 2015); *see also In re Heritage Bond Litig.*, 2005 WL 1594403, at *11 (C.D. Cal. June 10, 2005) ("[A] plan of allocation . . . fairly treats class members by awarding a pro rata share to every Authorized Claimant, [even as it] sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.").

The terms of the Plan of Allocation were fully disclosed in the Notice that was available on the Action's website.  *See* Wilson Decl. ¶56.  While Class Members have until January 29, 2025 to object, there have been no objections to the Plan to date.  *See id*.  Thus, Plaintiffs respectfully request that the Court approve the Plan of Allocation as fair, reasonable, and adequate.  *See, e.g., Crocs*, 306 F.R.D. at 693 (approving as fair and reasonable a similar plan that "reimburses class members based on the extent of their injuries").

## III.  THE NOTICE PROGRAM SATISFIES RULE 23, THE PSLRA, AND DUE PROCESS

Notice of a class action settlement must meet the requirements of Rule 23, the Due Process Clause, and the PSLRA.  *See Maxar*, 2024 WL 98387, at *5.  Rules 23(c)(2)(B) and 23(e)(1)(B) require that the Court direct to class members "the best notice that is practicable under the circumstances" and "in a reasonable manner[.]"  Fed. R. Civ. P. 23(c)(2)(B) & (e)(1)(B).  The PSLRA and Due Process Clause impose similar requirements.  *See* PA Mot. 15.

The Court preliminarily approved the form, content, and method of dissemination of the notices provided to potential Class Members.  *See* PA Order ¶¶19-21.  Pursuant to the

Preliminary Approval Order, Simpluris undertook the following services to notify Class

Members of the Settlement: (i) it published the Summary Notice in *Investor's Business Daily* and

*PR Newswire*; (ii) it mailed Postcard Notices to Settlement Class Members; (iii) it established

and maintained an official Settlement website about the Settlement containing the Notice and

Claim Form; and (iv) it established an official toll-free phone number to contact for information

about the Settlement.  Marra Decl. ¶¶8-18.  The Postcard Notice was mailed to 21,714 potential

Class Members and nominees beginning on October 15, 2024.  *See* Marra Decl. ¶¶8-14.  That

same day, the Notice and Claim Form were made available on the Settlement website, along with

the Stipulation and its exhibits, and the Preliminary Approval Order.  *See id.* at ¶17; Wilson

Decl. ¶¶ 8, 56.

The Summary Notice was published in *Investor's Business Daily* and posted by *PR

Newswire* on October 28, 2024.  *See* Marra Decl. ¶¶15-16; Wilson Decl. ¶44.

Additionally, Simpluris has set up a toll-free telephone helpline to accommodate potential

Class Members who have questions regarding the Settlement.  *See* Marra Decl. ¶18; Wilson

Decl. ¶ 45.

Pursuant to the requirements of Rule 23, the Due Process Clause, and the PSLRA, the

Notices were carefully drafted to notify the Class of the Settlement's terms, the Class Members'

rights in connection with the Settlement, the date of the Settlement Hearing, and the address for

the dedicated website on which to obtain more information about the Settlement in compliance

with Rules 23(c)(2) and 23(e), the PSLRA, and due process.  *See, e.g.*, Marra Decl., Exs. A-B.

Courts in this Circuit have routinely found that this method of mailing, publication, and

internet notice satisfies the applicable notice standards in similar class actions.  *See Tech*

*Instrumentation Inc. v. Eurton Elec. Co. Inc.*, 2019 WL 4386401, at *1 (D. Colo. Sept. 13, 2019) (finding "a summary postcard and full notice posted on a website" were an "adequate means to notify and inform members of the class").

## IV.    THE CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES

Pursuant to the Preliminary Approval Order, the Court conditionally certified the Class for Settlement purposes.  *See* PA Order ¶3.  Since the entry of that Order, no circumstances have changed to alter the propriety of the Court's certification and appointments.  Thus, pursuant to Rule 23(a) and (b)(3), and for the reasons set forth in further detail on pages 12-14 of the Preliminary Approval Motion, Plaintiffs respectfully request that the Court grant final certification of the following Class for the purposes of Settlement only:

> All Persons who purchased or otherwise acquired Ampio common stock between December 29, 2020 and August 2, 2022, inclusive, and were damaged thereby ("Settlement Class"). Excluded from the Settlement Class are (i) Defendants; (ii) members of the Immediate Family of any Individual Defendant; (iii) all subsidiaries and affiliates of Ampio and the current and former directors and officers of Ampio and its respective subsidiaries or affiliates; (iv) any firm, trust, partnership, corporation, or entity in which any Defendant has a controlling interest; (v) the legal representatives, agents, affiliates, heirs, successors-in-interest or assigns of all such excluded parties; and (vi) any persons or entities who properly exclude themselves by filing a valid and timely request for exclusion.

PA Order ¶ 3.  Plaintiffs also request that the Court appoint Tao Wang and SynWorld as Class Representatives and the Faruqi Firm as Class Counsel as they have adequately represented the Class throughout the Action and will continue to do so.

## CONCLUSION

Plaintiffs respectfully request the Court grant their motion in its entirety.

Dated:  December 23, 2024                    Respectfully submitted,

By: s/ James M. Wilson, Jr.

James M. Wilson, Jr.
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email:   jwilson@faruqilaw.com

Robert W. Killorin
**FARUQI & FARUQI, LLP**
3565 Piedmont Road NE Building Four
Suite 380
Atlanta, GA 30305
Telephone: 404-847-0617
Facsimile: 404-506-9534
Email:  rkillorin@faruqilaw.com

*Attorneys for Lead Plaintiffs Tao Wang and SynWorld
Technologies Corporation and Lead Counsel for the
putative Class*

**CERTIFICATE OF SERVICE**

I, James M. Wilson, Jr., hereby certify that on December 23, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the Court's Electronic Mail Notice List.

*s/ James M. Wilson, Jr.*
James M. Wilson, Jr.

**CERTIFICATE OF CONFERRAL**

Pursuant to D.C.COLO.LCivR 7.1(a), prior to filing the foregoing Motion, Plaintiffs' counsel emailed it to Defendants' counsel and Defendants' counsel responded via email confirming that Defendants do not oppose it.

*s/ James M. Wilson, Jr.*
James M. Wilson, Jr.