IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-02105-WJM-MEH

TAO WANG, individually and on behalf of all others similarly situated,
SYNWORLD TECHNOLOGIES CORPORATION, individually and on behalf of all others
similarly situated,

        Plaintiff,

v.

AMPIO PHARMACEUTICALS, INC.
MICHAEL A. MARTINO,
MICHAEL MACALUSO,
HOLLI CHEREVKA,
DAN STOKELY,
DAVID BAR-OR,
PHILIP H. COELHO, and
RICHARD B. GILES

        Defendants.

---

**LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND AN AWARD TO LEAD PLAINTIFFS; AND
MEMORANDUM OF LAW IN SUPPORT**

---

Faruqi & Faruqi, LLP (the "Faruqi Firm" or "Lead Counsel"),[1] respectfully moves this

Court for an Order pursuant to Rules 23 and 54 of the Federal Rules of Civil Procedure, and the

Private Securities Litigation Reform Act of 1995 (the "PSLRA"): (1) awarding attorneys' fees in

the amount of 28% of the Settlement Fund, or $840,000 plus accrued interest; (2) reimbursing

expenses in the amount of $66,475.24; and (3) authorizing an award for Lead Plaintiffs Tao

---

[1]     Unless otherwise noted, the following conventions are used herein: (a) all emphases are added; (b) all citations and internal quotation marks are omitted; (c) all capitalized terms have the meaning ascribed to them in the Stipulation and Agreement of Settlement dated May 13, 2024 ("Stipulation" or "Stip."), ECF No. 93; and (d) all references to "Rule(s)" refers to the Federal Rules of Civil Procedure.

1

Wang and his wholly-owned company, SynWorld Technologies Corporation ("Plaintiffs"), in the amount of $5,000 pursuant to 15 U.S.C. §78u-4(a)(4).

## MEMORANDUM OF LAW

As discussed in Lead Plaintiffs' Unopposed Motion for Preliminary Approval of the Class Action Settlement ("Preliminary Approval Motion" or "PA Motion"), ECF No. 94, Plaintiffs, on behalf of themselves and the putative Class, and Defendants Ampio Pharmaceuticals, Inc. ("Ampio" or the "Company"), Michael A. Martino, Holli Cherevka, Dan Stokely, David Bar-Or, Philip H. Coelho, and Richard B. Giles (with Ampio, the "Defendants"), have reached a proposed classwide Settlement for $3,000,000 that, if given final approval, will resolve all claims in the Action. The Settlement is the result of zealous prosecution by Lead Counsel and Plaintiffs. It is a favorable result for the Class considering the significant risks that a smaller recovery—or no recovery—might be achieved after further litigation, particularly in light of the risks posed by Ampio's financial condition.

In connection with the Settlement, Lead Counsel respectfully seeks approval of an award of attorneys' fees in the amount of 28% of the Settlement Fund, and reimbursement of $66,475.24 in expenses reasonably incurred during the Action.

As detailed below, the requested fee is fair and reasonable in light of the obstacles Lead Counsel has faced during the prosecution of this Action, Lead Counsel's skill and expertise in litigating securities class actions, and the favorable result obtained for the Class. This litigation was prosecuted under the PSLRA, which was intended to make litigation of securities class action lawsuits significantly more challenging and burdensome on investors. In recognizing the significant difficulty investors face under the PSLRA, former Supreme Court Justice Sandra Day

2

O'Connor recognized: "To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009).  In recognition of the risks undertaken and the effort expended by counsel in contingency fee cases brought under the PSLRA, courts in this Circuit and throughout the United States routinely award fees of this size in complex securities cases with comparable recoveries.  Lead Counsel also requests that Mr. Wang be granted an award of $5,000 pursuant to 15 U.S.C. §78u-4(a)(4) for the time and effort that he and his company devoted to representing the Class in this Action.

Accordingly, Lead Counsel respectfully submits that the awards requested herein should be granted.

## FACTUAL AND PROCEDURAL BACKGROUND

To avoid undue repetition, Lead Counsel respectfully refers the Court to the Declaration of James M. Wilson, Jr. in Support of Lead Plaintiffs' Motion for Final Approval of the Class Action Settlement and Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and an Award to Lead Plaintiffs (the "Wilson Declaration") for a detailed description of Plaintiffs' claims and the prosecution of the Action.  *See* Wilson Decl. ¶¶20-36.

## ARGUMENT

### I.    THE REQUESTED FEE IS REASONABLE IN THIS CASE

#### A.    This Circuit Prefers The Percentage Of The Fund Method Of Awarding Attorneys' Fees In Common Fund Cases

The proposed Settlement creates a common fund for the class.  In common fund cases like this one, "the Tenth Circuit has recognized the propriety of awarding attorneys' fees . . . on a percentage of the fund, rather than lodestar, basis."  *Peace Officers' Annuity & Benefit Fund of*

3

*Georgia v. DaVita Inc.*, 2021 WL 2981970, at \*1 (D. Colo. July 15, 2021) (Martínez, J.).

Accordingly, the percentage method is appropriate here.

### B.    The *Johnson* Factors Support The Reasonableness Of The Fee Request

To determine whether the percentage requested is reasonable, courts in this Circuit apply

the factors from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974),

*superseded by statute in bankruptcy context as recognized in In re Meronk*, 249 B.R. 208 (9th

Cir. 2000).  *See DaVita*, 2021 WL 2981970, at \*1-2.  The factors are:

> (1) the time and labor required by counsel; (2) the novelty and difficulty of the legal question presented; (3) the skill required to represent the class appropriately; (4) the preclusion of other employment by the attorneys due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Diaz v. Lost Dog Pizza, LLC*, 2019 WL 2189485, at \*5 (D. Colo. May 21, 2019) (Martinez, J.).

A court need not specifically address each *Johnson* factor, because rarely are they **all** applicable.

*DaVita*, 2021 WL 2981970, at \*1-2.  The relevant factors support the requested fees.[2]

### 1.    The Time and Labor Involved

Although this case settled relatively early in the litigation, it still required Lead Counsel

to expend a significant amount of time and labor to reach the result achieved.  As described in

the Wilson Declaration, Lead Counsel conducted a thorough investigation of the facts and law

---

[2]    Lead Counsel respectfully submits that the following factors do not pertain to this litigation: the time limitations imposed by the client or the circumstances, or the nature and length of the professional relationship with the client.  *See In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1143, 1151, 1153 (D. Colo. 2009) (finding those factors inapplicable in securities case); *Or. Laborers Emps. Pension Tr. Fund v. Maxar Techs. Inc.*, 2024 WL 98387, at \*3-5 (D. Colo. Jan. 9, 2024) (evaluating the other *Johnson* factors in securities class action).

and committed extensive resources to the prosecution of this Action.  Over the course of 1,152.3 hours, Lead Counsel, *inter alia*:

- Conducted a lengthy investigation into the facts alleged, including reviewing and analyzing press releases, SEC filings, conference call transcripts, analyst reports, stock price movements, and information from the U.S. Food and Drug Administration ("FDA") concerning the clinical trials at issue;

- Conferred with an investigator who conducted an investigation that included contacting individuals likely to possess relevant information, such as former Ampio employees;

- Prepared a highly detailed amended complaint (ECF No. 57);

- Conducted complex research into the securities laws and Ampio's financial condition in connection with evaluating the propriety of the mediation;

- Consulted with a damages expert to determine the damages suffered by the Class and to better understand the issues facing recovery for the Class;

- Drafted a mediation statement, analyzed Defendants' mediation statement, and participated in settlement negotiations with opposing counsel and Robert E. Meyer of JAMS, a well-respected and highly experienced mediator, in a day-long mediation session;

- Negotiated at length with opposing counsel regarding confirmatory discovery and finalizing the terms of the Settlement;

- Reviewed over 25,000 documents in confirmatory discovery provided by Defendants and interviewed two Ampio representatives, one of whom was knowledgeable about the Company's financial condition and prospects, and the other of whom was knowledgeable

about the AC's allegations and Defendants' defenses, to confirm that the Settlement was fair, reasonable, and adequate;

- Drafted the Stipulation and attendant notice documents; and

- Prepared motions and briefs in support of preliminary approval of the Settlement.

*See* Wilson Decl. ¶¶57-69, Ex. 2.

Lead Counsel will devote additional hours and resources to preparing for and attending the Settlement Hearing, assisting potential Class Members with the completion and submission of their Claim Forms, monitoring the claims process, corresponding with the Claims Administrator, and responding to Class Member inquiries.  *See Maxar*, 2024 WL 98387, at \*6 (listing lead counsel's anticipated work in connection with the settlement administration process as a factor supporting the requested fee).  The significant amount of time and effort that Lead Counsel devoted to this case to obtain the $3,000,000 recovery, work that will continue even if the Settlement is approved, confirms the reasonableness of the 28% fee request.

Although not required in the Tenth Circuit, a lodestar "cross-check" also supports the fee request.  *See Voulgaris v. Array Biopharma, Inc.*, 60 F.4th 1259, 1265-66 (10th Cir. 2023) (stating that lodestar cross-check is not required).  To determine the lodestar, the court multiples the number of hours a law firm's attorneys and staff devoted to the litigation by a reasonable hourly rate.  *See Maxar*, 2024 WL 98387, at \*3 n.2.

Lead Counsel spent a total of 1,152.3 hours litigating this Action over the past two years, resulting in a lodestar of $756,157.50.  Wilson Decl. ¶64-65.  The Faruqi Firm's hourly billing rates range from $700-1,050 for partners, $450-575 for associates, $350 for law clerks, and $325-375 for paralegals.  *Id.* at ¶67.  To determine the propriety of the hourly rates, courts are to

look to "similar cases": here, "complex securities class action on a contingent basis."  *Voulgaris*,

60 F.4th at 1266.  While Lead Counsel's rates are high for the Denver market, they are consistent

with those approved in similar cases.  *See id.* (finding that the district court "appropriately found

that the rates charged in this [securities class action] ($455 to $1,050) were 'generally consistent'

with those approved in similar cases"); *Maxar*, 2024 WL 98387, at *7 (awarding counsel's

requested 30% of the settlement despite lead counsel's high hourly rates, which went up to

$1,250 per hour and were higher than Denver rates, where the fee requested "remains well within

the range customarily approved by the courts"); *DaVita*, 2021 WL 2981970, at *3 (citing cases

to show hourly rates previously approved by the Court and in the District, which ranged from

$435-$1,060 per hour).

In any event, "it is common in this District to approve contingency fees resulting in fee

awards that are multiples of the lodestar amount."  *Maxar*, 2024 WL 98387, at *7.  Here, Lead

Counsel's fee request results in a multiplier of 1.11, which is within the range of those typically

awarded in similar securities class actions in this District and nationwide and confirms the

reasonableness of the requested fees.  *See Voulgaris,* 60 F. 4th at 1266 (noting that a multiplier

of 2.8 is "consistent with the typical range of multipliers routinely approved by courts in this

District and the Tenth Circuit"); *DaVita*, 2021 WL 2981970, at *3 (awarding a fee request that

equates to a 2.75 multiplier, "which is at the low end of the typical range of multipliers routinely

approved by courts in this District and the Tenth Circuit"),

The hours Lead Counsel worked are also reasonable.  While the Settlement was achieved

early in the litigation, Lead Counsel performed a great deal of work on behalf of the Class in the

meantime.  *See* Section I.B.1, *supra*; Wilson Decl. ¶64, Ex. 2.  Lead Counsel respectfully

submits that the 1,152.3 hours worked in connection with this Action were necessary to achieve this favorable result.  *See id.*

### 2. The Novelty and Difficulty of the Questions Involved

As numerous courts have acknowledged, "[l]itigating an action under the PSLRA is not a simple undertaking, especially given the specificity required to plead such claims."  *In re Crocs, Inc. Sec. Litig.*, 2014 WL 4670886, at *3 (D. Colo. Sept. 18, 2014).  This litigation proved no exception.  In addition to being prosecuted under the PSLRA, the events at issue in this case involve clinical drug trials, requiring Lead Counsel to gain an understanding of the applicable scientific concepts and FDA regulations in play.  *See* Wilson Decl. ¶64; AC ¶¶41-63.

### 3. The Skill Required and the Experience, Reputation, and Ability of the Attorneys

The skill required and the quality of the representation that Lead Counsel provided supports the reasonableness of the requested fee.  Lead Counsel is a national law firm with extensive experience prosecuting complex securities class actions.  Wilson Decl. ¶62.  The credentials and experience of the attorneys who worked on this action are set forth in the Wilson Declaration (¶69) and the Faruqi Firm's resume, Ex. 1.  The favorable outcome in this case is attributable to Lead Counsel's experience and diligence.

Here, Lead Counsel achieved a favorable Settlement for the Class early in the litigation, saving hundreds if not thousands of hours of legal time that may have increased its fees and expenses.  *See Castagna v. Madison Square Garden, L.P.*, 2011 WL 2208614, at *10 (S.D.N.Y. June 7, 2011).  Additionally, by settling early with Defendants whose available funds were being depleted due to, *inter alia*, Ampio's winding down its operations, costs related to additional litigation involving derivative claims, and its dwindling insurance policies, Lead Counsel helped

maximize the Class's recovery by averting additional litigation expenses that would have further eroded the funds available. *See Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 363-64, 373 (S.D.N.Y. 2002) ("Given that the Company was and remains in difficult financial straits . . . the relatively quick settlement provides a certain benefit to the Class . . . ." and has "far reaching benefits in the judicial system").

The fact that several well-respected firms served as Defendants' counsel in the Action provides further support for Lead Counsel's requested award. *See* Wilson Decl. ¶63; *Voulgaris v. Array Biopharma Inc.*, 2021 WL 6331178, at *13 (D. Colo. Dec. 3, 2021) (finding the quality of opposing counsel supported fee request for one third of the settlement).

### 4. The Contingent Nature of the Fee, the Undesirability of the Action, and the Preclusion of Other Employment

Federal securities class action cases "are often seen as undesirable" because they are "notoriously difficult and uncertain," *In re Spectranetics Corp. Sec. Litig.*, 2011 WL 13238696, at *2 (D. Colo. Apr. 4, 2011), and "require plaintiffs' counsel to expend substantial time and effort with no guarantee of success," *DaVita*, 2021 WL 2981970, at *3.

Here, the risk that Lead Counsel would recover no compensation for its work on the case "was not merely hypothetical, especially where, as here, Plaintiffs were subject to the PSLRA's heightened pleading standard and faced the immediate possibility of an adverse decision . . . ." *Crocs*, 2014 WL 4670886, at *4-5 ("A contingent fee arrangement often weighs in favor of a greater fee because [s]uch a large investment of money [and time] place[s] incredible burdens upon law practices.").

While Lead Counsel was not outright precluded from taking on any additional cases due to accepting this case, the amount of time and resources Lead Counsel has and would need to

continue to devote to the case was something Lead Counsel took into account when considering whether to take on other work.

### 5.  The Amount Involved and Results Obtained

"Courts in this District have repeatedly found that when determining the amount of fees to be awarded, the 'greatest weight should be given to the monetary results achieved for the benefits of the class." *Maxar*, 2024 WL 98387, at *7.  Here, the $3,000,000 Settlement represents approximately 14% of the Class's estimated maximum damages, which is significantly above the median recovery of 1.8% for cases with similar damages in 2023.  Wilson Decl. ¶61; *see Crocs*, 2014 WL 4670886, at *4 (granting final approval to settlement that represented 1.3% of damages).  Furthermore, when negotiating the Settlement, Lead Counsel carefully examined the continued time and expense of additional litigation as well as Plaintiffs' likelihood of success on the merits, the maximum provable damages, and the likelihood of obtaining a larger settlement after continued litigation, particularly considering Ampio's precarious financial position.  *See* Wilson Decl. ¶¶30-36.

Thus, "the result achieved for the Class—especially at this early stage—is favorable considering the potential vulnerabilities of Lead Plaintiff's case." *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016).

### 6.  The Fee Requested is Customary and Consistent with Awards in Similar Cases

Lead Counsel is seeking 28% of the Settlement Fund, which is less than "the typical fee award in complex cases[,]" which "is around one third of the common fund." *Maxar*, 2024 WL 98387, at *7.  The amount requested is on par with the range of fees awarded in comparable cases nationwide.  *See, e.g., Nakkhumpun v. Taylor*, 2016 WL 11724397, at *5 (D. Colo. June

13, 2016) (awarding lead counsel 33% of $3.2 million settlement where it devoted 1,695 hours

with a lodestar value of $965,320); *In re Revolution Lighting Techs., Inc. Sec. Litig.*, 2020 WL

4596811, at *3 (S.D.N.Y. Aug. 11, 2020) (awarding lead counsel 33.33% of $2,083,333.33

settlement, plus accrued interest, where case settled before an amended complaint was filed or

any motion to dismiss briefing took place and counsel devoted around 990 hours to the

litigation);[3] *RMED Int'l, Inc. v. Sloan's Supermarkets, Inc*., 2003 WL 21136726, at *2 (S.D.N.Y.

May 15, 2003) (awarding 33⅓% of $975,000 settlement, plus expenses).

Accordingly, this factor further supports Lead Counsel's requested fee award.

## II.    LEAD COUNSEL'S EXPENSES WERE REASONABLY INCURRED IN CONNECTION WITH THIS ACTION

Pursuant to the notices, Lead Counsel also respectfully seeks reimbursement of

$66,475.24 reasonably incurred in connection with prosecuting this Action.  *See* Wilson Decl.

¶71.  It is well-established that "an attorney who creates or preserves a common fund for the

benefit of a class is entitled to receive reimbursement of all reasonable costs incurred."

*Voulgaris*, 2021 WL 6331178, at *14.

Lead Counsel has itemized the categories of expenses it incurred and attests to its

accuracy in the Wilson Declaration.  Wilson Decl. ¶¶70-78, Ex. 3.  Lead Counsel's expenses

include fees paid to a fact investigator and damages consultant, mediation fees, eDiscovery fees,

electronic research, photocopying, travel, telephone, and court filing fees.  Wilson Decl. ¶¶73-77.

These expenses are those for which "attorneys routinely bill private clients for such expenses in

---

[3]    The memorandum of law filed in *Revolution Lighting* in support of the fee award sets
forth the settlement amount and hours expended, and makes clear that the amount of attorneys'
fees awarded represented 33.33% of it.  *See In re Revolution Lighting Techs., Inc. Sec. Litig.*, No.
19-cv-00980-JPO (S.D.N.Y.), ECF No. 70 at 1-2, 6 (July 7, 2020).

non-contingent litigation." *Zynga*, 2016 WL 537946, at \*22 (approving expense request for,

*inter alia*, "copy, court costs, computer research, delivery fees, expert and investigator fees,

mediation, telephone, and travel costs[]"). Lead Counsel believes the expenses incurred were

reasonable and necessary to adequately prosecute the claims in this Action. Wilson Decl. ¶78.

### III.    THE REQUESTED AWARD FOR LEAD PLAINTIFFS IS REASONABLE

Finally, Lead Counsel seeks an award in the amount of $5,000 for Mr. Wang's

reasonable costs and expenses directly relating to the representation of the class, pursuant to the

PSLRA. 15 U.S.C. §78u-4(a)(4); *see Maxar*, 2024 WL 98387, at \*5 (stating that such awards are

"specifically envisioned in the PSLRA and routinely awarded by courts nationwide"). The

notices disseminated to the Class stated that the Lead Plaintiffs may seek reimbursement of up to

$5,000. Declaration of Anne-Marie Marra of Simpluris Regarding Notice and Settlement

Administration, Ex. A at 2, Ex. B at 2, 4. To date, there have been no objections to the proposed

award to Plaintiffs. Wilson Decl. ¶49.

Plaintiffs have been fully committed to pursuing the Class's claims against Defendants

since moving for appointment as Lead Plaintiffs in 2022. As set forth in Tao Wang's declaration

accompanying this motion, he conservatively estimates that he spent 50 hours of his time in work

directly related to the representation of the Class. Wilson Decl. ¶80; Ex. 4 ¶6 (Wang Decl.). Mr.

Wang's work on behalf of the Class included: engaging in numerous communications with Lead

Counsel about the Action throughout the litigation; collecting information about his and

SynWorld's Ampio transactions; reviewing documents filed in or regarding the Action; and

authorizing the Settlement. *Id.* at ¶4. These are precisely the types of activities courts have

found support awards to class representatives in PSLRA cases. *See, e.g., Bilinsky v. Gatos*

*Silver, Inc.*, 2024 WL 4494290, at *7 (D. Colo. Oct. 15, 2024) (granting a $15,000 award to two plaintiffs pursuant to the PSLRA, finding it fair and reasonable for the "time [they] devoted to overseeing this Action[]");  *In re Am. Int'l Grp., Inc. Sec. Litig.*, 2010 WL 5060697, at *3 (S.D.N.Y. Dec. 2, 2010) (awarding lead plaintiffs $30,000 pursuant to 15 U.S.C. §78u-4(a)(4) "to compensate them for the time and effort they devoted on behalf of a class"); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1173-74 (S.D. Cal. 2007) (awarding lead plaintiff $40,000 based on his hourly rate of $200 as CEO); *Ramsey v. MRV Commc'ns Inc.*, 2010 WL 11596641, at *8-9 (C.D. Cal. Nov. 16, 2010) (awarding the lead plaintiff $11,000 for 35.75 of the hours he spent working on the case).

Accordingly, Lead Counsel, on behalf of Plaintiffs, respectfully requests that the Court grant Plaintiffs a $5,000 award pursuant to 15 U.S.C. §78u-4(a)(4).

**CONCLUSION**

Lead Counsel respectfully requests the Court grant its motion in its entirety.

Dated:  December 23, 2024          Respectfully submitted,

By: s/ James M. Wilson, Jr.

James M. Wilson, Jr.
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email:  jwilson@faruqilaw.com

Robert W. Killorin
**FARUQI & FARUQI, LLP**
3565 Piedmont Road NE Building Four
Suite 380
Atlanta, GA 30305
Telephone: 404-847-0617
Facsimile: 404-506-9534
Email:  rkillorin@faruqilaw.com

13

*Attorneys for Lead Plaintiffs Tao Wang and SynWorld Technologies Corporation and Lead Counsel for the putative Class*

14

**CERTIFICATE OF SERVICE**

I, James M. Wilson, Jr., hereby certify that on December 23, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the Court's Electronic Mail Notice List.

*s/ James M. Wilson, Jr.*
James M. Wilson, Jr.

**CERTIFICATE OF CONFERRAL**

Pursuant to D.C.COLO.LCivR 7.1(a), prior to filing the foregoing Motion, Plaintiffs' counsel emailed it to Defendants' counsel and Defendants' counsel responded via email confirming that Defendants do not oppose it.

*s/ James M. Wilson, Jr.*
James M. Wilson, Jr.

1