# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-02105-WJM-MEH

TAO WANG, individually and on behalf of all others similarly situated,
SYNWORLD TECHNOLOGIES CORPORATION, individually and on behalf of all others similarly situated,

        Plaintiff,

v.

AMPIO PHARMACEUTICALS, INC.
MICHAEL A. MARTINO,
MICHAEL MACALUSO,
HOLLI CHEREVKA,
DAN STOKELY,
DAVID BAR-OR,
PHILIP H. COELHO, and
RICHARD B. GILES

        Defendants.

---

**DECLARATION OF JAMES M. WILSON, JR. IN SUPPORT OF LEAD PLAINTIFFS'
MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT AND
LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND AN AWARD TO LEAD PLAINTIFFS**

---

I, James M. Wilson, Jr., declare as follows:

1.    I am admitted in this Court. I am a partner in the law firm of Faruqi & Faruqi, LLP (the "Faruqi Firm" or "Lead Counsel"), which represents Lead Plaintiffs Tao Wang and SynWorld Technologies Corporation ("Plaintiffs") and the putative Class in the above-captioned securities class action pending in this Court (the "Action").[1]  I have been actively involved in the prosecution of this Action and have personal knowledge of the matters set forth herein based upon my close supervision and participation in the Action.  If called upon, I could and would competently testify that the following facts are true and correct to the best of my knowledge.

## I.    PRELIMINARY STATEMENT

2.    I respectfully submit this Declaration in support of Plaintiffs' Motion for Final Approval of the Class Action Settlement ("Final Approval Motion" or "FA Mot."), and Lead Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and an Award to Plaintiffs ("Fee Motion" or "Fee Mot.").  Both motions are filed concurrently herewith.

3.    Plaintiffs, on behalf of themselves and the putative Class, and Defendants Ampio Pharmaceuticals, Inc. ("Ampio" or the "Company"), Michael A. Martino, Holli Cherevka, Dan Stokely, David Bar-Or, Philip H. Coelho, and Richard B. Giles (with Ampio, the "Defendants"), have reached a proposed class wide Settlement for $3,000,000 that, if given final approval, will resolve all claims in the Action.

---

[1]    Unless otherwise noted, the following conventions are used herein: (a) all capitalized terms have the meaning ascribed to them in the Stipulation and Agreement of Settlement dated May 13, 2024 ("Stipulation" or "Stip."), ECF No. 93; and (b) all references to "Rule(s)" refers to the Federal Rules of Civil Procedure.

4.      The terms of the Settlement are set forth in the Stipulation.  The Court preliminarily approved the Stipulation by its Order dated September 24, 2024 ("Preliminary Approval Order"), ECF No. 97.

5.      This declaration sets forth the nature of the claims asserted, the procedural history of the Action, and the methods by which the Settlement Class was notified of the Settlement.  It also demonstrates the reasons why the Settlement and the Plan of Allocation are fair, reasonable, and adequate, and why Lead Counsel's application for attorneys' fees, reimbursement of expenses, and an award for Plaintiffs should be approved.

6.      While Plaintiffs' Counsel believes that the allegations in the Action have substantial merit, Plaintiffs' Counsel respectfully submits that the Settlement represents a favorable result for the Settlement Class.

7.      The Settlement is the result of extensive arm's length and contentious settlement negotiations among experienced and capable counsel with a comprehensive understanding of the merits and value of the claims asserted.  With the assistance of an experienced mediator, counsel met for an all-day mediation session to vigorously debate the strengths and weaknesses of the claims and defenses.  The Parties came to an agreement in principle at the mediation session and thereafter agreed to the terms and procedures reflected in the Stipulation.  Lead Counsel's ability to come to a compromise early in light of the many complex issues and competing factions present in this Action evidences the skill of representation and the quality of the results.

8.      Pursuant to the Preliminary Approval Order, beginning on October 15, 2024, the Postcard Notice has been mailed to 21,714 potential Class Members and nominees, and the Notice and Claim Form were made available on the designated settlement website,

www.AmpioSecuritiesSettlement.com, along with the Stipulation and Preliminary Approval Order.  *See* Declaration of Anne-Marie Marra of Simpluris Regarding Notice and Settlement Administration ("Marra Declaration" or "Marra Decl.") ¶¶8-14, 17-18.  The Summary Notice was published in *Investor's Business Daily* and transmitted over *PR Newswire* on October 28, 2024.  Marra Decl. ¶¶15-16, Exs. E-F.

9.    Throughout the litigation, Lead Counsel has adeptly navigated the complicated issues of law and fact inherent in a securities class action.  The Settlement provides an immediate and certain benefit to the Settlement Class considering the significant risks that a smaller recovery—or, indeed, no recovery at all—might be achieved after a trial and the likely appeals that would follow, which could prolong the Action for years and incur significant additional expenses.

10.    Lead Counsel also respectfully requests that the Court approve the Plan of Allocation for the Settlement proceeds, an award of attorneys' fees in the amount of $840,000, plus accrued interest, and reimbursement of expenses in the amount of $62,475.24.  The fee award constitutes 28% of the Settlement Fund, which is in line with the amount of attorneys' fees awarded by courts in this Circuit and is reasonable in light of the relevant factors, including the quality of the representation, the complexity of the Action, and the risks of representing the Settlement Class in this Action.  The expenses incurred by Lead Counsel were reasonable and necessary to prosecute this Action and to reach this favorable result for the Settlement Class.

## II.    SUMMARY OF PLAINTIFFS' CLAIMS

11.    This Action arises out of Defendants' allegedly misleading statements and omissions that are alleged to violate §§10(b) and 20(a) of the Securities Exchange Act of 1934

("Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. §240.10b-5. *See* Amended Class Action Complaint ("AC"), ECF No. 57.

12. During the Class Period (December 29, 2020 to August 2, 2022), Ampio was a pre-revenue stage biopharmaceutical company. AC ¶¶1, 3, 40. Its lead product candidate, Ampion®, was being developed to treat osteoarthritis of the knee ("OAK"). AC ¶3.

13. Briefly, the AC alleges that Defendants materially misrepresented and omitted material facts regarding, *inter alia*, the latest trial of Ampion. *See generally* AC. Plaintiffs allege that Defendants knowingly and/or recklessly made the challenged statements while omitting that Ampio employees engaged in serious misconduct by prematurely viewing the drug trial results and distributing Ampion for a use that had not been approved by the FDA. *See, e.g., id.* at ¶2.

14. Plaintiffs allege that Defendants violated the double-blind testing protocols to prematurely find out that Ampion was ineffective and then, with the board member defendants' participation, improperly sought to monetize Ampion by approving its use outside the clinical trials and without U.S. Food and Drug Administration ("FDA") approval.

15. Meanwhile, the AC alleges that Defendants maintained, *inter alia*, that the trial remain blinded, that they believed the AP-013 Trial would be successful, that other drug manufacturing companies were interested in partnering with Ampio for the distribution of Ampion, and that Ampio's employees were acting ethically and lawfully.

16. Plaintiffs allege that the truth of Defendants' actions leaked out in a series of disclosures beginning in April 2022, when the FDA rejected the Company's attempt to salvage

4

the failed trial by claiming there was a subgroup of patients for whom Ampion was effective. AC ¶¶10-11. This revelation was followed by the disclosure that the Company formed a special committee to investigate improper practices with respect to Ampion, which culminated in the August 3, 2022 bombshell confirmation of certain executive officers' and directors' misconduct and the admission that Ampion was ineffective for OAK and that its development was being discontinued. AC ¶¶12-16.

17. Plaintiffs allege that each disclosure of material new information to investors about Ampion and the Company's improper practices caused material drops in Ampio's stock price from a Class Period high of $2.49 on February 12, 2021 to $0.10 at the close of the Class Period. AC ¶¶10-16, 152, 156.

18. A few months after the Class Period, the SEC launched an investigation into Ampio's wrongdoing and potential violations of the federal securities laws. AC ¶¶17, 119.

19. Defendants have denied and continue to deny each and all of the claims alleged by Plaintiffs and the Settlement Class. *See* Stip. 5 ¶J.

### III. PROCEDURAL HISTORY

20. The Action began on August 17, 2022, when the initial class action complaint was filed. ECF No. 1.

21. On October 17, 2022, six motions for appointment as lead plaintiff were filed in accordance with the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4. On August 9, 2023, the Court appointed Mr. Wang and Synworld as Lead Plaintiffs, and their counsel, the Faruqi Firm, was appointed Lead Counsel. ECF No. 42.

22.     On October 16, 2023, Plaintiffs filed the AC.  ECF No. 57.  When developing the claims in the AC, Lead Counsel conducted an extensive investigation into the facts alleged in the Action.  This included, *inter alia*, working with a private investigator to reach out to potential confidential witnesses to provide more insight into the claims; reviewing documents filed publicly with the SEC, press releases, news articles, financial information, analyst reports, conference call transcripts, and other public statements issued by or concerning Ampio; filing a Freedom of Information Act ("FOIA") request with the FDA for information related to Ampion; and scouring the FDA's website for relevant information.

## IV.     THE SETTLEMENT

### A.     Settlement Negotiations

23.     Shortly after the AC was filed, the Parties discussed Ampio's financial condition and concerns about its ability to remain a going concern and reached an agreement to expeditiously seek to take the case to mediation.  Prior to engaging in settlement negotiations, Lead Counsel spent considerable time evaluating the facts and arguments available in this Action.  In addition to conducting an extensive investigation into the facts alleged, Lead Counsel conducted a thorough review of Ampio's SEC filings and public disclosures to gauge the Company's financial condition and prospects.  Lead Counsel also conferred with a damages expert, conducted complex legal research for and drafted a mediation statement, and reviewed Defendants' mediation statements and conducted further research into their possible defenses.

24.     With the benefit of this investigation and comprehensive analysis of the factual and legal issues in this Action, all Parties entered settlement negotiations well-informed of the strengths and weaknesses of the claims and defenses asserted in this Action.

25.     On January 4, 2024, the Parties participated in an all-day mediation session before Robert E. Meyer of JAMS, a well-respected and highly experienced mediator, to explore a potential negotiated resolution of the Action's claims. The mediation resulted in the Parties reaching an agreement-in-principle to settle and release the claims in the Action, subject to the completion of confirmatory discovery.

26.     Following the mediation, Lead Counsel negotiated the scope of document production, a confidentiality agreement to govern confirmatory discovery, and conducting interviews of Ampio representatives. Thereafter, Lead Counsel reviewed over 25,000 documents provided by Defendants. Lead Counsel also interviewed two Ampio representatives to discuss the Company's financial condition and prospects as well as the AC's allegations and the Defendants' defenses.

27.     The confirmatory discovery following the mediation reinforced concerns about the risks facing the litigation, particularly with respect to the funds available to fund a settlement or judgment. For example, one of the Ampio representatives interviewed confirmed that Ampio is "winding down" operations to the "bare bones" to preserve cash with no plans to seek further sources of capital.

28.     This dire state of affairs was echoed in subsequent SEC filings. For example, the Company's annual report for 2023 revealed that as of December 31 of that year, Ampio's only source of liquidity was $4.1 million of cash and cash equivalents and $0.9 million of an insurance recovery receivable. *See* Annual Report 8 (Form 10-K) (Mar. 27, 2024) ("2023 10-K"). These amounts decreased to $3.4 million and $0.5 million, respectively, as of February 29, 2024. *Id*. Meanwhile, Ampio was also facing two consolidated federal derivative actions, a state

7

court derivative case, and an SEC investigation, which are reducing the insurance available to fund any settlement of this Action.  *See* 2023 10-K at 8-9.

29.     Taken together, the confirmatory discovery produced to Plaintiffs and Ampio's public filings fully supported Plaintiffs' decision to settle and confirms the Settlement's fairness, adequacy, and reasonableness.  Following Lead Counsel's review of the confirmatory discovery, the Parties were able to negotiate the complete terms of the Settlement, which are memorialized in the Stipulation.

**B.      Reasons for the Settlement**

30.     Lead Counsel strongly believes that the claims asserted in this Action are meritorious and that the evidence developed to date supports those claims.  That said, Lead Counsel recognizes that additional time and expense would be necessary in order to bring this case to trial.

31.     For example, without the Settlement, the Parties would have had to brief Defendants' motions to dismiss.  Plaintiffs anticipate that Defendants would argue, *inter alia*, that any alleged misstatements were immaterial, lacked falsity, and that the AC failed to plead that Defendants acted with the requisite scienter.

32.     Even if Plaintiffs' claims survived the motions to dismiss, the briefing would require a great deal of time and effort from both sides, leading to increased expenses and further draining Ampio's available funds.

33.     The Parties would then need to spend a significant amount of time engaging in a fact discovery process that would likely be timing consuming and expensive.  For example, the AC alleges, *inter alia*, that certain defendants had access to information about the Ampion trial

8

data and distributed the drug to third parties without proper authorization, in violation of FDA rules and regulations. *See, e.g.*, AC ¶¶6-7. The AC also alleges that the SEC launched an investigation into Ampio's conduct. *Id*. at ¶17. Thus, the discovery process would require, among other things, subpoenas to any third-party drug recipients, former Ampio employees, clinical trial vendors and facilities, many of which may be subject to the Health Insurance Portability and Accountability Act ("HIPAA") limitations; the retention of expert witnesses regarding technical issues about the relevant FDA rules and regulations; discovery motion practice; production and review of thousands of pages of documents; and taking numerous depositions.

34.     Obtaining the necessary discovery is further complicated here by the passing of defendant Michael Macaluso, as Plaintiffs will not be able to obtain from him any interrogatory responses or deposition testimony. *See* ECF No. 53.

35.     Even if the Action proceeded to the summary judgment stage, there is no guarantee Plaintiffs' claims would survive. If Plaintiffs' claims were to survive summary judgment, there is no certainty of a favorable jury verdict, and even then, this case may present novel issues on appeal with an uncertain outcome and if they did, there is also a risk that the jury might be swayed by Defendants' theory of the case at trial.

36.     Were Plaintiffs to prevail through trial and appeals, there is an extremely high chance that no money would be available to fund a judgment, as discussed above. The Settlement, by contrast, represents an immediate and certain benefit for the Settlement Class. Lead Counsel, having evaluated the substantial risk, time, and expenses required to prosecute

9

this Action through trial and any appeals, strongly believes that the Settlement is a favorable result for the Settlement Class.

### C.    The Settlement Terms

37.    The Settlement, which the Court preliminarily approved, provides for the gross payment of $3,000,000 to secure a settlement of the claims asserted in the Action against Defendants.  If approved, the Settlement will finally resolve Plaintiffs' allegations against Defendants and release all Released Claims against them in the Action.

38.    As part of the Settlement, Defendants have denied liability and any wrongdoing.

39.    All eligible Settlement Class Members who timely submit a valid Claim Form and are eligible to receive at least $10.00 will receive a distribution from the Net Settlement Fund, which is the Settlement Fund minus administration expenses, Lead Counsel's fees and expenses, any award to Plaintiffs, and any Taxes and Tax Expenses.

40.    Based on this declaration and for the reasons set forth in the accompanying memoranda, Lead Counsel respectfully submits that the terms of the Settlement and the Plan of Allocation are fair, reasonable, and adequate law, and the possible defenses to the claims asserted in this Action.

## V.    THE COURT'S PRELIMINARY APPROVAL ORDER AND PLAINTIFFS' DISSEMINATION OF THE NOTICE

### A.    Preliminary Approval Order

41.    On May 13, 2024, Plaintiffs filed the Preliminary Approval Motion, seeking preliminary approval of the Settlement, approval of the manner and content of the proposed notice, and scheduling of the Settlement Hearing.  *See* ECF No. 94.

42.    On September 24, 2024, the Court issued the Preliminary Approval Order, which:

(a)    granted preliminary approval of the Stipulation and the Settlement set forth therein, subject to further consideration at the Settlement Hearing;

(b)    for purposes of settlement only, preliminarily certified the Action as a class action on behalf of the Class, appointed Plaintiffs as Class Representatives and Lead Counsel as Class Counsel;

(c)    scheduled a Settlement Hearing for February 19, 2025 at 10:30 a.m. to determine whether: (i) the proposed Settlement is fair, reasonable, and adequate and should be finally approved by the Court; (ii) a Judgment should be entered dismissing the Action with prejudice; (iii) the proposed Plan of Allocation is fair, reasonable, and adequate and should be approved; (iv) determine the amount of fees and expenses to be awarded to Lead Counsel; (v) determine any award to Plaintiffs pursuant to 15 U.S.C. §78u-4(a)(4); (vi) hear and determine any objections to the Settlement; and (vii) rule on such other matters as the Court may deem appropriate.

(d)    approved the form and content of the Postcard Notice, Notice, Claim Form, and Summary Notice, and found that the mailing and distribution of those documents substantially in the manner set forth in ¶¶10-13 of the Preliminary Approval Order met the requirements of Rule 23, the PSLRA, and due process, and is the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all Persons entitled thereto;

(e)    approved Simpluris as the Claims Administrator to administer the notice program and process claims;

11

(f)     established procedures and deadlines for Class Members to submit Claim Forms

or seek exclusion; and

(g)     established procedures and deadlines for Class Members to object to the

Settlement, Plan of Allocation, and/or the application for an award of attorneys'

fees, expenses, and an award to Plaintiffs.

**B.      Notice**

43.     Pursuant to the Preliminary Approval Order, Lead Counsel is serving on

Defendants' counsel and filing with the Court the Marra Declaration, concurrently herewith.

The Marra Declaration sets forth the efforts undertaken by Simpluris to mail the Postcard Notice

to Class Members, to publish the Summary Notice, and to establish the website and toll-free

telephone line.

44.     As detailed in the Marra Declaration, beginning on October 15, 2024, Simpluris

mailed or caused to be mailed a total of 21,714 Postcard Notices to potential Settlement Class

Members and nominees.  *See* Marra Decl. ¶¶ 8-14.  The Summary Notice was posted by *PR*

*Newswire* and published in *Investors' Business Daily* on October 28, 2024.  *See id*. at ¶¶ 15-16,

Exs. E-F.

45.     Additionally, Simpluris established a telephone helpline to accommodate

potential Settlement Class Members who have questions about the Settlement.  *See id*. at ¶18.

46.     Simpluris also set up the website, www.AmpioSecuritiesSettlement.com, to

provide information about the proposed Settlement to Settlement Class Members and others.  *See*

*id*. at ¶17.  The website makes available for viewing and downloading important documents,

including the Notice, Claim Form, Preliminary Approval Order, Stipulation, and other case-

related documents. *See id.* The website also lists the exclusion, objection, and claim filing deadlines for this Action as well as the date and time of the Settlement Hearing. *See id.*

47.    As required by Rule 23, due process, and the PSLRA, the Notice: (a) described the nature of the claims asserted in the Action; (b) included the case caption; (c) included a definition of the Settlement Class; (d) summarized the Settling Parties' reasons for entering into the Settlement; (e) listed the name, telephone number, and address for Lead Counsel; (f) disclosed that Lead Counsel intends to seek attorneys' fees of up to 28% of the Settlement Fund, and reimbursement of expenses not to exceed $75,000, plus accrued interest, and an award to Plaintiffs not to exceed $5,000; (g) provided the date, time, and location of the Settlement Hearing; (h) advised Settlement Class Members of their right to appear at the Settlement Hearing and instructed them that the date may change; (i) advised Settlement Class Members of their right to exclude themselves from the Settlement Class and the binding effect of doing so; (j) provided the deadline and procedure for opting out of or opposing the Settlement, Plan of Allocation, or award of attorneys' fees and expenses to Lead Counsel; (k) explained the consequences of remaining in the Settlement Class; (l) provided the manner in which to obtain more information, including the address for the designated website; and (m) explained how to access the case docket at the courthouse or on PACER. *See* Marra Decl., Ex. B.

### C.    Reaction of the Settlement Class

48.    The Notices provide that objections to the Settlement, Plan of Allocation, and/or the application for attorneys' fees, expenses, and award for Plaintiffs must be received no later than January 29, 2025. *See* Marra Decl., Ex. B at 2, 11-12, 13. Objections are to be filed with the Court and mailed or otherwise delivered to Plaintiffs' and Defendants' Counsel. *Id.* at 13.

13

49.    Although 21,714 Postcard Notices have been mailed to potential Settlement Class Members and nominees (*see id*. ¶¶8-13), as of December 23, 2024, no requests for exclusion from or objection(s) to the Settlement have been received.  *See id.* ¶¶19-20.  No objection(s) to the Plan of Allocation, the attorneys' fee award, Plaintiffs' award, and/or the requested reimbursement of expenses have been received either.  *See id*.

50.    If any objections or requests for exclusion are received, they will be addressed in Plaintiffs' reply papers.

### D.    Plan of Allocation

51.    Pursuant to the Preliminary Approval Order, and as explained in the Notice, all Settlement Class Members who wish to participate in the Settlement must submit a Claim Form with supporting documentation to Simpluris so that it is postmarked or submitted electronically no later than January 13, 2025.  *See* Marra Decl., Ex. B at 2, 8.

52.    As set forth in the Notice, all Settlement Class Members who timely file a valid Claim Form and whose *pro rata* share of the Net Settlement Fund amounts to $10.00 or more will receive a distribution of the Settlement proceeds, after deduction of, *inter alia*, attorneys' fees and expenses, Plaintiffs' award and taxes incurred on the Settlement Fund.  *See* Marra Decl., Ex. B at 8, 16-20.  The distribution will be made in accordance with the Plan of Allocation set forth and described in detail in the Notice.  *See id.*

53.    The objective of the Plan of Allocation is to equitably distribute the Net Settlement Fund among Authorized Claimants who suffered economic loss as a result of Defendants' alleged misconduct as opposed to losses caused by market or industry factors not related to the alleged fraud.  *See*, *e.g.*, Marra Decl., Ex. B at 16.

14

54.    Under the Plan of Allocation, the Claims Administrator will calculate each Authorized Claimant's Recognized Loss, as explained in the Notice.  *See* Marra Decl., Ex. B at 16-20.  The calculation of a Recognized Loss will depend on several factors, including when the shares of Ampio common stock were purchased during the Settlement Class Period, and for what amounts, and whether such shares were sold, and if sold, when they were sold, and for what amounts.  *See id.* at 16.  The Claims Administrator will use the Recognized Loss formula to determine each Authorized Claimant's *pro rata* share to proportionately allocate the Net Settlement Fund among the Authorized U.S. Claimants.  *See id.* at 16-20.

55.    The Plan of Allocation was formulated with the assistance of Lead Counsel's damages consultant, and it tracks the theory of damages alleged in the AC.  It was also reviewed and approved by Simpluris, a claims administrator with substantial experience in claims administration.

56.    The terms of the Plan of Allocation were fully disclosed in the Notice which was made available on this Action's designated website beginning on October 15, 2024.  *See* Marra Decl. ¶17.  To date, there have been zero objections to the Plan of Allocation.  *See id*.  Therefore, Plaintiffs respectfully submit that it is fair, reasonable, and adequate, and should be approved by the Court.

**VI.    LEAD COUNSEL'S APPLICATION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES**

**A.    Attorneys' Fees**

57.    Lead Counsel has represented the Settlement Class on a wholly contingent basis for over a year.  To date, Lead Counsel has received no payment for its services or the expenses incurred in prosecuting this Action against Defendants and negotiating the Settlement.

15

Throughout this time, Lead Counsel's dedication to recovering a favorable result for the Settlement Class has been expensive and challenging.

58.    The Notices informed Settlement Class Members that Lead Counsel will apply for an award of attorneys' fees of up to 28% of the Settlement Fund and reimbursement of expenses not to exceed $75,000, plus accrued interest.[2]

59.    Lead Counsel requests that the Court award a fee of 28% of the Settlement Fund, or $840,000, plus accrued interest.

60.    As discussed in the Fee Motion, filed concurrently herewith, seeking an award of attorneys' fees in an amount of 28% of the Settlement Fund is in line with similar awards granted in this Circuit.  In light of the favorable result achieved for the Settlement Class, the skill required, the quality of work performed, the risk of pursuing claims on a contingency basis, and the amount of time and resources Lead Counsel has dedicated to this Action, Lead Counsel respectfully submits that a fee of 28% of the Settlement Fund is justified and should be approved.

61.    According to Plaintiffs' consulting damages expert, the $3,000,000 Settlement Amount recovers approximately 14% of the maximum potential damages available in the Action (assuming the proposed Class is certified and all claims and damages are proven).  This is substantially higher than the median ratio of settlement to investor losses for recent securities class action settlements, which NERA determined was 1.8% for 2023, and the median settlement

---

[2]    Lead Counsel's request for interest accrued on the fee and expense amounts is limited to the interest or income earned on those amounts between the time the Settlement Amount was deposited into the Escrow Account to the time the fees and expenses are permitted to be disbursed.

value for settlements where investor losses were between $20-49 million, which NERA

determined was 5.1%  ECF No. 95-3 at 25-26.  This percentage is also well within the range of

Court-approved recoveries in complex securities class actions such as this.  Based on

Defendants' adamant denials of any liability, as well as the substantial time and expense of

continued litigation, this Settlement Amount represents a favorable recovery for the Settlement

Class.

62.    Lead Counsel's expertise and persistence have been vital to obtaining this result

for the Settlement Class.  As set forth in its firm resume, attached as ***Exhibit 1*** hereto, the Faruqi

Firm is a nationally recognized class action firm with extensive experience litigating and

negotiating settlements as lead or co-lead counsel in complex securities class actions.

63.    In order to reach a successful resolution of this Action, Lead Counsel was

required to litigate the case zealously because Defendants were represented by several

experienced firms, including Ballard Spahr LLP, Brownstein Hyatt Farber Schreck LLP,

Pillsbury Winthrop Shaw Pittman LLP, Holland & Hart LLP, Foley & Lardner LLP, and Hilgers

Graben PLLC.  All of these firms defended their clients vigorously.

64.    As evidenced by the Faruqi Time Report, a true and correct copy of which is

attached hereto as ***Exhibit 2***, throughout the litigation, Lead Counsel has committed 1,152.3

hours to prosecuting this Action.  This includes time spent, *inter alia*: (1) conducting an

extensive investigation, as well as reviewing press releases, online and newspaper articles, SEC

filings, conference call transcripts, and stock price movements; (2) filing a FOIA request with the

FDA; (3) conducting research for and briefing the contested lead plaintiff motion; (4)

corresponding with Defendants' counsel regarding scheduling and other matters; (5) preparing a

17

detailed amended complaint; (6) conducting complex legal research in connection with drafting the amended complaint and preparing for settlement negotiations, including gaining an understanding of the applicable scientific concepts and FDA regulations in play; (7) consulting with a damages expert to better understand the issues facing recovery for the class; (8) drafting the mediation statement and reviewing Defendants' mediation statements in advance of the mediation to better understand the strengths and weaknesses of Plaintiffs' case and Defendants' defenses; (9) communicating with Plaintiffs throughout the Action; (10) conducting research for and filed the Motion for an Extension of Time to File a Motion for Substitution of defendant Michael Macaluso pursuant to Rule 25(a)(1) (ECF No. 83); (11) engaging in a mediation session and corresponding with Defendants thereafter regarding confirmatory discovery; (12) reviewing over 25,000 documents provided in confirmatory discovery and taking interviews of two Ampio representatives; (13) drafting the Settlement Stipulation, Notices, and related materials; and (14) drafting the preliminary approval papers.

65.     Based upon the hours expended by Lead Counsel and the current billing rates for Lead Counsel's professionals, the total lodestar is $756,157.50.  The lodestar results in a modest multiplier of 1.11.

66.     The Faruqi Firm's time, set forth in *Exhibit 2*, is taken from daily time records regularly prepared and maintained by the Faruqi Firm in the ordinary course of business.  I reviewed the firm's time records in connection with the preparation of this declaration.  The purpose of this review was to confirm the accuracy, necessity for, and reasonableness of, the time committed to the litigation, and to make reductions where appropriate.  As a result of this

18

review, I believe that the time reflected in the Faruqi Firm's lodestar calculation is reasonable and was necessary for the effective and efficient prosecution and resolution of the litigation.

67.    The total number of hours reasonably and necessarily spent by the Faruqi Firm in this Action is 1,152.3 hours.  The Faruqi Firm's hourly billing rates range from $700 to $1,050 for partners, $450 to $575 for associates, $350 for law clerks, and $325 to $375 for paralegals. The total lodestar amount for attorney and support staff time, based on the Faruqi Firm's current rates, is $756,157.50.  The hourly rates for attorneys and support staff in the Faruqi Firm, included in Exhibit 2, are reasonable for complex securities class actions and the expertise of the attorneys.

68.    Lead Counsel will also devote additional hours and resources to this Action on an ongoing basis, including, *inter alia*: preparing for and participating in the Settlement Hearing; assisting potential Settlement Class Members with the completion and submission of their Claim Forms; monitoring the claims process; corresponding with the Claims Administrator; drafting and filing a motion for distribution of the Net Settlement Fund; and supervising the distribution of the Net Settlement Fund to Settlement Class Members.

69.    A brief description of the qualifications and experience for each individual for whom fees are claimed is set forth below.  The case-related contributions of each person is illustrated on page 1 of Exhibit 2, as it sets forth how much time each person spent on each part of the litigation.

(a)    Nadeem Faruqi:  Nadeem Faruqi is a Managing Partner of the Faruqi Firm and oversees all aspects of the firm's practice areas.  He has over 30 years of experience in civil litigation, and has served as sole or co-lead counsel in many

19

notable securities cases. Additional information about Mr. Faruqi's qualifications and experience is set forth in the Faruqi Firm Resume. *See* Exhibit 1 at 13-14.

(b)     James M. Wilson, Jr.: Mr. Wilson is a Partner of the Faruqi Firm and Co-Chair of the firm's Securities Litigation Practice Group. He has over 30 years of experience in civil litigation and over 20 years of experience representing investors in securities class actions in particular. Additional information about Mr. Wilson's qualifications and experience is set forth in the Faruqi Firm Resume. *See* Exhibit 1 at 18.

(c)     Robert W. Killorin. Mr. Killorin is a Partner of the Faruqi Firm, Co-Chair of the firm's Securities Litigation Practice Group, and a member of the firm's Institutional Investor Practice Group. He has over 35 years of experience in civil litigation, and has focused much of his career representing investors in shareholder merger and securities litigation. Additional information about Mr. Killorin's qualifications and experience is set forth in the Faruqi Firm Resume. *See* Exhibit 1 at 18-19.

(d)     Katherine M. Lenahan: Ms. Lenahan is a Partner of the Faruqi Firm. She has over 10 years of experience representing investors in securities class action litigation. Additional information about Ms. Lenahan's qualifications and experience is set forth in the Faruqi Firm Resume. *See* Exhibit 1 at 22-23.

(e)     Megan M. Remmel: Ms. Remmel was a Partner of the Faruqi Firm during this Action's pendency. She has over 10 years of experience representing investors in

20

securities class action litigation.  Ms. Remmel graduated from Brooklyn Law School (J.D., cum laude) in 2011.

(f)     Thomas Papain:  Mr. Papain was an associate of the Faruqi Firm during this Action's pendency, where he focused his practice on securities litigation.  Mr. Papain has over 9 years of experience in civil litigation. Mr. Papain earned his J.D. from Fordham University School of Law in 2012.

(g)     Dylan B. Weeks: Mr. Weeks was an associate of the Faruqi Firm during this Action's pendency. He earned his J.D. from Brooklyn Law School in 2014. During his time at the Faruqi Firm, Mr. Weeks focused his practice on securities litigation. Prior to joining the Faruqi Firm, Mr. Weeks was a litigation Associate at a boutique law firm focusing on the defense of high-exposure construction claims and general liability matters.

(h)     Matthew A. Conrad:  Mr. Conrad is an associate of the Faruqi Firm, where he focuses his practice on securities litigation.  Mr. Conrad has 6 years of experience in civil litigation.  Additional information about his qualifications and experience can be found in Exhibit 1 at 27.

(i)     Thanh Hoang:  Ms. Hoang is an associate of the Faruqi Firm, where she focuses her practice on securities litigation.  Ms. Hoang has 3 years of experience in litigation.  Additional information about her qualifications and experience can be found in Exhibit 1 at 28-29.

(j)     Kayla Kershen:  Ms. Kershen was a law clerk at the Faruqi Firm during this Action's pendency, where she focused on securities litigation.  Prior to joining the

Faruqi Firm, Ms. Kershen interned with a prominent plaintiff-side securities litigation firm where she gained exposure to complex class actions. Ms. Kershen earned her J.D. from Brooklyn Law School in 2023, where she was awarded the Carswell Merit Scholarship and the Evelyn Gross Scholarship.

(k)    Derek Behnke: Mr. Behnke earned his B.A. in English from New York University in 2001 and began working as a law firm paralegal shortly after graduation. Mr. Behnke has been a paralegal with the Faruqi Firm since 2013 and has served as the firm's head paralegal in numerous securities cases throughout the years.

(l)    Anthony Aloise: Mr. Aloise has been a paralegal at the Faruqi Firm since April 2015. He graduated from the University of Richmond in 2000 with a B.A. in Theatre and a B.S. in Marketing.

(m)    Nicholas Halloran: Mr. Halloran has been a paralegal with the Faruqi Firm since September 2021. He graduated from Fordham University's Gabelli School of Business (Finance Major) in May 2019.

(n)    Christian Carrano: Mr. Carrano started with the Faruqi Firm in March 2021 and served as a paralegal there during the pendency of this Action. He graduated from Fordham University's Gabelli School of Business with a degree in Finance in 2019. He graduated from St. John's University with an MBA, Business Analytics in 2021.

22

(o)    Evelyn Zheng: Ms. Zheng started with the Faruqi Firm in May 2023 and was a paralegal there during the pendency of this action.  She graduated from Stony Brook University with an M.A. in Bioethics.

**B.    Expenses**

70.    The expenses incurred by Lead Counsel in the prosecution of the Action are set forth in the accompanying Expense Report from the Faruqi Firm, a true and correct copy of which is attached hereto as ***Exhibit 3***.

71.    The Faruqi Firm's Expense Report provides that it has incurred $62,475.24 in expenses, and expects to incur an additional $4,000.00 related to travel expenses in connection with the Settlement Hearing, for a total of $66,475.24.

72.    The expenses in the Faruqi Firm's Expense Report are taken from the books and records of the Faruqi Firm maintained in the ordinary course of business.  The books and records are prepared from expense vouchers, check records, and other such documents.  I reviewed the Faruqi Firm's expense records in connection with the preparation of this declaration.  The purpose of this review was to confirm the accuracy, necessity for, and reasonableness of the litigation expenses, and remove any expenses that did not meet these criteria.  As a result of this review, I believe that the expenses reflected in the Faruqi Firm's Expense Report are reasonable and were necessary for the effective and efficient prosecution and resolution of the Action and are of the type that would normally be charged to a fee-paying client in the private legal marketplace.

73.    Some of the largest expenditures were the $16,106.50 in expenses incurred by the private fact investigator, $12,500 in mediation fees, and $7,160 in damages expert fees.

74.    Lead Counsel hired the investigator to conduct a background fact investigation and to reach out to potential confidential witnesses to provide more insight into what was happening at the Company during the Class Period.  *See, e.g.,* AC ¶¶36-39.

75.    Lead Counsel also retained an economic consulting firm, Stanford Consulting Group, Inc., to consult on the damages and loss causation issues present in the Action, and to assist with the preparation of the Plan of Allocation.

76.    Lead Counsel respectfully submits that fees paid to the fact investigator, mediator, and damages consulting expert were reasonable and necessary to prosecute the Action to the point at which it settled.

77.    The remainder of Lead Counsel expenses, $26,708.74, reflect routine and typical expenditures incurred during litigation, including but not limited to legal filings, court reporting fees, electronic research, photocopying, postage, and meals.  All of these expenditures are the types of expenses incurred in similar class actions of this size and would be billed to a fee-paying client.

78.    The total expenses, $66,475.24, are less than the $75,000 in potential expenses that the Notice informed the Settlement Class may be incurred.  Lead Counsel respectfully submits that these expenses are reasonable in light of the pace and duration of the Action and were necessarily incurred for its successful resolution.  Lead Counsel understood that it might not recover any expenses if the Action was dismissed, and therefore took steps to minimize costs wherever possible without jeopardizing its duty to zealously represent the Settlement Class.

## C.    Award for Plaintiffs

79.    Lead Counsel also respectfully requests that the Court grant an award of $5,000 to Mr. Wang to reimburse him for his services as a representative of the Class.

80.    As set forth in the Declaration of Tao Wang, attached hereto as ***Exhibit 4***, he has taken his and his Company's role as representatives of the Settlement Class very seriously. Since he and SynWorld were appointed Lead Plaintiffs on August 9, 2023, Mr. Wang has dedicated at least 50 hours of his time to the Action by:

(a)    engaging in numerous communications with Lead Counsel about this Action;

(b)    gathering documents for the lead plaintiff motion;

(c)    submitting a sworn certification and declaration regarding his and SynWorld's Ampio transactions, his background, and his understanding of the lead plaintiffs' duties;

(d)    reviewing documents filed and/or prepared in the Action; and

(e)    consulting with counsel, participating in the day-long mediation, and providing input on the mediation and settlement negotiations.

*See* Ex. 4.

81.    Thus, Mr. Wang actively and effectively complied with the demands that arose during the litigation and settlement of this Action. The types of activities that Mr. Wang engaged in are precisely the type of efforts that courts have found support an award to class representatives.  Because he played an integral role in this Action, Lead Counsel respectfully submits that he should be reimbursed for the time and effort he devoted to actively representing the Class in this Action.

## VII.   LIST OF EXHIBITS

82.     Attached hereto as Exhibit 1 is a true and correct copy of the Faruqi Firm Resume.

83.     Attached hereto as Exhibit 2 is a true and correct copy of the Faruqi Firm's Time Report.

84.     Attached hereto as Exhibit 3 is a true and correct copy of the Faruqi Firm's Expense Report.

85.     Attached hereto as Exhibit 4 is a true and correct copy of the Declaration of Tao Wang in Support of Lead Counsel's Motion for Attorneys' Fees, Expenses, and an Award to Lead Plaintiff under 15 U.S.C. §78u-4(a)(4).

86.     Attached hereto as Exhibit 5 is a true and correct copy of Ampio's Certificate of Dissolution.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 23rd day of December 2024 at New York, NY.

*/s/ James M. Wilson, Jr.*
James M. Wilson, Jr.

## CERTIFICATE OF SERVICE

I, James M. Wilson, Jr., hereby certify that on December 23, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the Court's Electronic Mail Notice List.

*s/ James M. Wilson, Jr.*
James M. Wilson, Jr.